Gaston, Judge.
 

 It has been long
 
 settled that when
 
 one of several co-sureties lias been compelled to pay the debt of bis principal, be lias a right in a Court of Equity to call upon the others for their contribution. This right to contribution was probably founded upon the maxim, that equality between those whose obligations are identical, is equity, and that the creditor cannot be permitted at his choice, to impose on
 
 one, that
 
 burthen which, on the principles of natural
 
 justice,
 
 ought to be borne by
 
 all.
 
 In modern times, the Courts of Law in England, assumed a jurisdiction over such demands, upon the ground that this principle of equality being settled, a contract by the co-sureties to contribute according to this principle might be inferred. The Courts of Law however, in this State, declined to assume this jurisdiction, considering it as belonging exclusively to a
 
 *362
 
 Court of Equity. The Legislature then interfered and by the act of 1807
 
 (Rev.ch. 722,')
 
 declared that wiien one of several sureties shall have been compelled to pay the debt of his principal, and such principal should be insol-rent or out of the State, the surety so paying, should have and maintain his action on the case against the other surety or sureties, for his or their rateable proportion of the debt so paid, before any Court of record, or justice of the peace having jurisdiction of the amount demanded. We regard this act as intended to remove the scruples of our judges, and to make thenceforth, what had been supposed an obligation in conscience only, and proper to be enforced exclusively in a Court of Equity, a legal obligation ñt for the cognizance of a Court of Law. Co-sureties therefore arc to be regarded as having mutually contracted to make this contribution in the event of a loss being thrown upon cither, in the manner designated in this act.
 

 Where a note ^¿aJaWes°“ that the statut LimitationS begins to run from its date.
 

 It is a general rule that the statute of limitations attaches, or commences its operation whenever there is a complete cause of action, and not before. If therefore a demand he necessary to consummate the cause of action, the statute will not begin to run until such demand is made. Thus in the case of
 
 Topham v Braddick,
 
 (1
 
 Taunton 572,)
 
 «'here a merchant brought an action against a factor upon an implied promise to account for the goods consigned to him for sale, to pay over the proceeds of the sales, and to deliver the residue unsold
 
 on demand,
 
 inasmuch as there was no breach of the contract until a demand, it was held that the statute began to run from that time. So if a note be made payable at a specified time after sight, or after demand, the statute does not attach until that
 
 specified time has
 
 expired after presentment. Where the note is payable upon demand, there are contradictory opinions as to the time when the statute commences its operation, though the better opinion seems to be that it commences from the date of the note, because an actual demand is not necessary to ...
 
 .
 
 the cause of action. The question then in this case turns entirely upon the enquiry, whether the plaintiff’s cause
 
 *363
 
 of action was complete when lie paid
 
 off the judgment,
 
 his principal being then insolvent; or was it imperfect and unconsummated. until his application to the defendant for reinbursement? If the first view be correct, he is barred by the statute — but if the second be correct, he is not barred.
 

 The implied contract betweeft co-sureties, is a contract for mutual indemnity and there is a complete cause of action whenever the injury is sustained.
 

 Notice should be given by a surety to his co-surety,of the payment of money for tb cir principal, before the commencement of the suit.
 

 We are of opinion that the implied contract between the parties was substantially a contract for mutual indemnity, and that there was a complete cause of action whenever the injury was sustained against which indemnity was stipulated. They agreed to divide the loss, if any should happen to either by default of their principal, and relief was not to bo had against him, because of his insolvency, or removal beyond the reach of legal process. When all these facts concurred, then the contingency happened upon which payment of a proportionate part was promised to be made. The only difficulty which wo have found in coming to this conclusion was occasioned by the consideration that as well upon authority, as upon the principles of reason and fairness, the plaintiff ought to show an application to the defendant, or at least a notice to him of the happening of the contingency, before he instituted his action. It is stated in the elementary books, and the position is sustained by judicial decisions, that in an action by one surety against another, the plaintiff must shew their common obligation as sureties, the payment of the debt by the plaintiff, and arr application to the defendant for the payment of his share. It is right that it should be so. The defendant may be ignorant of the default of the principal, or of the payment by the plaintiff. He may be willing to pay his part without suit — -or notice may be important to him, to procure the means of re-imburse-inent, But on the
 
 other hand, to hold that
 
 the cause of action is not complete until after this application or notice, and that the statute does not commence its operation but from the time of such notice, would be to expose individuals to many of the mischiefs of stale demands, against which this beneficial statute intended to protect them. Notice is required not because the plaintiff’s cause
 
 *364
 
 of action is imperfect, but because the matters or part of the matters, constituting the cause of action lie only in the knowledge of the plaintiff, as when a man promises to pay such rate for wares as any other paid the plaintiff, notice must be alledged in the plaintiff’s declaration of the rate that another gave. (Com.
 
 Pleader
 
 c. 73.) Where a man promises to pay ten pounds to J. S. upon a contingency, as when he comes from Rome, or when he marries — the right of action accrues from the happening of the contingency, and from that time the statute begins to run.
 
 (God.
 
 437. 1
 
 Lev.
 
 48. 1
 
 Hen. Black
 
 631.) If the contingency be one which lies as much in the defendants knowledge as in that of the plaintiff, he must take notice of it at his peril; but if it lies more properly in the knowledge of the plaintiff than of the defendant, there, if the action be a
 
 special
 
 action of assumpsit, the declaration ought to aver that the defendant had notice thereof, and if the action be a general
 
 indebitatus as-sumpsit,
 
 such notice ought to be shewn on the trial.— (1
 
 Chitty's Pleading
 
 319, 320.)
 

 It is the opinion of the Court that the judgment rendered below should be reversed, and that a judgment of nonsuit be entered.
 

 Per Curiam. — Judgment reversed.