AMERICAN NATIONAL FIRE INSURANCE COMPANY v. JOHN M. GIBBS, TRADING AND DOING BUSINESS AS GIBBS-WOOD TRANSPORT COMPANY, AND THE FIDELITY & CASUALTY COMPANY OF NEW YORK.

(Filed 19 December 1963.)

**1. Insurance § 3;   Principal and Surety § 1—**

That part of a contract under which a company agrees to indemnify the assured for loss or damage from perils therein defined, with provision for

subrogation of the company to the right of assured against third persons, constitutes a contract of insurance, G.S. 58-3; while that part of the contract under which the company obligates itself to pay to any shipper or consignee, claims for which the assured would be liable by provision of statute (G.S. 62-121.26), with stipulation that the assured should reimburse the company for any such payment, is a surety contract.

**2. Insurance § 87;  Principal and Surety § 2—**

The agreement in this case contained a contract insuring a carrier from loss by fire and theft, etc., and also a contract of suretyship in regard to claims of third persons under statutory provision (G.S. 62-121.26). *Held:* Provisions of the insurance contract that action be commenced within a specified time are not applicable to claims under the surety contract, and the surety's right of action for reimbursement of claims of third persons paid by it does not arise until such payment, and action brought within three years of such payment is not barred either under the contract or by the three year statute of limitations.

**3. Principal and Surety § 10—**

Where two sureties are liable for claims of third persons under provision of statute (G.S. 62-121.26) against the principal, the surety paying the entire claim may sue the other for contribution, but the cosurety is not liable, either under the bond or under the statute, for the entire amount, there being neither contractual nor statutory liability for indemnity.

APPEALS by defendants from *Bickett, J.,* March Assigned 1961 Civil Session of WAKE.

This action was begun by the issuance of summons on 14 March 1955.

Plaintiff seeks to recover from defendants the sum of $2,958.93 with interest from 30 May 1953. It alleges it disbursed that sum to creditors of defendant Gibbs at his request and to comply with the terms of its contract with Gibbs.

Liability of The Fidelity & Casualty Company of New York, hereafter Fidelity, is asserted by reason of a bond dated 29 January 1952 for the sum of $6,000, payable to the State of North Carolina.

Defendants denied liability in any sum and as additional defenses pleaded the three-year statute of limitations and a contractual provision fixing one year as the time in which an action could be maintained for the recovery of the amounts expended.

The parties waived jury trial. The court made findings of fact which, so far as necessary for a decision, are set out in the opinion. Based on the admissions in the pleadings, stipulations, and findings, the court concluded defendants were liable to plaintiff in the sum sued for; the action was not barred by contract stipulations or by the pleaded statute of limitations. It rendered judgment for the amount claimed. Each defendant excepted and appealed.

*Joyner & Howison by W. T. Joyner, Jr., for plaintiff appellee.*
*Vaughan S. Winborne for defendant appellant Gibbs.*
*Vaughan S. Winborne for defendant appellant Fidelity & Casualty*
*Company of New York.*

RODMAN, J.   Defendant Gibbs was, on and prior to 1 April 1951, a
motor carrier holding motor carrier certificate C-422, issued by the
North Carolina Utilities Commission. He did business under the name
of "Gibbs-Wood Transport Company."

On 1 April 1951 plaintiff issued to Gibbs-Wood Transport Company
its policy of insurance 9567. The policy declares its purpose is "to in-
demnify the Assured, for loss or damage from perils hereinafter de-
fined, arising from its legal liability as a carrier and/or bailee under
bills of lading and/or shipping receipts issued by the Assured on ship-
ments of lawful goods and/or merchandise consisting principally of
General Commodities and Unmanufactured Tobacco." The perils
against which plaintiff assured Gibbs protection were for loss or dam-
age to shipments caused by (a) fire, (b) perils of the sea, (c) collision,
meaning thereby the violent and accidental contact of the conveyance
with any other automobile, vehicle, or object, (d) overturning of the
transporting conveyance, (e) collapse of bridges and culverts, (f) flood,
(g) cyclone and tornado, (h) theft of an entire shipping package.

The policy contains these additional pertinent provisions: "SUB-
ROGATION—In all cases of loss, the assured shall, at the request of
said Company or its agents, assign and subrogate all their rights and
claims against others to said Company at time of payment to an
amount not exceeding the sum paid by this Company. This Company
is not liable for any loss which, without their consent, has been settled
or compromised with others, who may be liable therefor."

"NOTICE AND PROOF OF LOSS—Loss, if any, under this policy
to be reported as soon as practicable with full particulars to the Com-
pany or its Agent. The assured shall file with the Company or its
Agent, a detailed sworn proof of loss within ninety days from date of
loss. Failure by the assured either to report said loss or damage or to
file such written proofs of loss as above provided, or as required by law,
shall invalidate any claim under this policy."

"SUIT AGAINST COMPANY—It is a condition of this policy that
no suit, action or proceeding for the recovery of any claim under this
policy shall be maintainable in any court of law or equity unless the
same be commenced within twelve (12) months next after the time a
cause of action for the loss accrues. Provided, however, that if by the
laws of the state within which this policy is issued such limitation is

invalid, than *(sic)* any such claim shall be void unless such action, suit or proceeding be commenced within the shortest limit of time permitted by the laws of such state, to be fixed herein.

"SUIT AGAINST OTHERS BY ASSURED—It is expressly agreed that upon the payment of any loss or advancement or loan of moneys concerning the same, that the assured will at the request and expense of the Company and through such counsel as the Company may designate, make claim upon and institute legal proceedings against any carrier, bailee, or other parties believed to be liable for such loss, and will use all proper and reasonable means to recover the same."

Attached to the policy issued by plaintiff are two endorsements. These bear the same date as the policy. One is captioned: "ENDORSEMENT FOR MOTOR COMMON CARRIER POLICIES OF INSURANCE FOR CARGO LIABILITY UNDER SECTION 215 OF THE INTERSTATE COMMERCE ACT." The other is entitled: "ENDORSEMENT FOR MOTOR COMMON CARRIER POLICIES OF INSURANCE FOR CARGO LIABILITY UNDER SECTION 19 OF THE NORTH CAROLINA TRUCK ACT OF 1947." The language of the endorsements is substantially identical. Each recites that it is intended to assure compliance with the provisions of a designated statute. The endorsements obligated plaintiff to pay within the limits of liability to any shipper or consignee "for all loss of or damage to all property belonging to such shipper or consignee, and coming into the possession of the insured in connection with its transportation service, for which loss or damage the insured may be held legally liable . . ." The endorsement with respect to the North Carolina statute limited plaintiff's liability for losses occurring "on the route or in the territory authorized to be served by the insured or elsewhere within the borders of the State of North Carolina." The endorsement conforming to the federal statute contains no provision with respect to the area in which liability may be incurred. Each endorsement contains this language: "The insured agrees to reimburse the Company for any payment made by the Company on account of any loss or damage involving a breach of the terms of the policy and for any payment that the Company would not have been obligated to make under the provisions of the policy, except for the agreement contained in this endorsement."

Prior to 25 January 1952 defendant Gibbs, doing business as Gibbs-Wood Transport Company, and New Dixie Lines, Inc., filed a petition with the North Carolina Utilities Commission seeking Commission approval for the sale of Gibbs' franchise rights, his motor equipment, and certain real estate owned by him. A hearing was had on this petition

on 25 January 1952. The Commission gave its approval to the sale by order dated 29 January 1952. It recites in its order that Gibbs testified: ". . . he was familiar with the provisions of Section 22 of the North Carolina Truck Act wherein a Vendor must satisfy all debts and claims of which such seller has any knowledge or notice and to the effect that the list of debts and claims offered in evidence as Petitioner's Exhibit #2 was a true and accurate statement, such list being claims in the amount of $2,988.95 for Loss or Damage of goods transported or received for transportation, and that Vendor was in a position to furnish bond in double the aggregate of such debts and claims as required by Section 22 of the Act." The Commission, in approving the sale, said: "Upon full consideration of the petition, the contract, and representations made to the Commission and the bond filed with the Commission in amount double the aggregate of all the Loss or Damage Claims of which the Vendor has knowledge, the Commission finds no reason why the proposed sale and transfer should not be approved insofar as the Commission is authorized to do so under the provisions of General Statute 62-107."

On the date the Commission authorized Gibbs to sell to New Dixie, Fidelity and Gibbs executed the bond to the State of North Carolina in the sum of $6,000, conditioned in this language: "Whereas John M. Gibbs, the principal herein, applied to the Utilities Commission of the State of North Carolina for permission to sell or transfer to New Dixie Lines, Incorporated, of Richmond, Virginia, the franchise granted it by said Utilities Commission, and

"WHEREAS, There are still certain outstanding claims for loss and damage to property previously transported by the principal.

"NOW THEREFORE, if the said John Gibbs shall pay all sums as specified by Section 22 of the North Carolina Truck Act of 1947, then this obligation shall be null and void; otherwise to be and remain in full force and effect."

The court found: "From April 1951 to January 1952, the defendant Gibbs had various claims made against him by shippers or consignees for loss or damage to goods. Beginning in late February 1952, until January 20, 1953, the defendant Gibbs sent these various claims to the plaintiff for payment. Commencing on March 19, 1952, and ending on July 6, 1953, the plaintiff paid to the various shippers on account of the claims referred to in this paragraph a total of $2,958.93." He found as a fact that none of the losses for which payment was made by plaintiff were caused by the perils specifically enumerated in the policy but were made pursuant to the provisions of the endorsements as required by sec. 19 of the Truck Act of 1947 and by the Interstate Commerce Act.

Before considering plaintiff's claim against Fidelity, it is necessary to ascertain if there is error in the judgment as it relates to the defendant Gibbs.

The rights and obligations of Gibbs and plaintiff were fixed by contract. It is not suggested that this contract is contrary to public policy or contravenes any statute.

When we look at the contract to determine the rights of the parties, it is immediately apparent that it is divided into two separate and distinct parts: The first by express language "insures" Gibbs, i.e., "assures" him against loss resulting from the perils there expressly enumerated. That portion of the contract is a clear contract of insurance. G.S. 58-3; 44 C.J.S. 471; 29 Am. Jur. 433; Webster's 3rd Int. Dic. 1173.

The second portion of the agreement is not a contract insuring Gibbs. It does not purport to afford him protection. It agrees to pay shippers' or consignees' claims which they could assert against Gibbs by reason of his contract of carriage. Not only does plaintiff not obligate itself to save Gibbs from loss with respect to these claims, but Gibbs expressly agrees to reimburse plaintiff for any payments made by it pursuant to the endorsements, i.e., the second portion of the contract. Plaintiff became a surety on Gibbs' obligations arising from his contracts of carriage.

The insuring portion of the contract, by express language, required the "assured," Gibbs, to file proof of loss with the "company," plaintiff, within ninety days of the loss to impose any obligation on the company. This provision is valid. Gibbs could not recover for losses sustained as provided in the policy of insurance unless he complied with this provision. *Muncie v. Ins. Co.*, 253 N.C. 74, 116 S.E. 2d 474; *Boyd v. Ins. Co.*, 245 N.C. 503, 96 S.E. 2d 703; 29 A Am. Jur. 491.

Plaintiff alleged and defendant Gibbs admitted that in February 1952 he began to send claims to plaintiff for lost or damaged goods transported by him. These claims were forwarded without any information with respect to the cause of loss or damage and without any assertion that plaintiff was obligated to pay because of the insuring provisions of the contract. Plaintiff, in acknowledging receipt of the first batch of these claims which Gibbs requested it to pay, called attention to the provision of the endorsement obligating Gibbs to reimburse it for payments made pursuant to that portion of the contract. It expressly denied that any of the claims filed represented losses resulting from the perils enumerated in the insuring part of the contract. The letter concluded with the statement that plaintiff would "look to you for reimbursement of the full amount paid to claimants by virtue

of the common carrier endorsement, including all expenses incurred in so doing." Thereafter and without protest so far as the record discloses, Gibbs continued to send claims of shippers or consignees to plaintiff for payment.

The evidence is sufficient to sustain the court's findings that the claims paid for which plaintiff seeks reimbursement were not within the insuring portion of the contract and that no proof of loss had been filed as required by the insuring portion of the contract.

Was Plaintiff's right to recover from Gibbs the payments made at his request barred by the contractual provisions of the policy? If not, was it barred by the three-year statute of limitations? Each question must be answered in the negative. The contractual provision limiting to twelve months the time in which suits must be brought is by express language limited to "suits against Company." It applies only to insured losses, i.e., losses arising from the enumerated perils. It has no application to suits by plaintiff against Gibbs for payments made at his request, and which he promised to repay.

Defendants contend plaintiff stands in the shoes of the claimants it paid, and for that reason the lapse of time which would have barred claimants' right of action against Gibbs likewise bars plaintiff's claim against Gibbs.

Defendants misapprehend the law. A surety who, pursuant to his contractual obligation, pays the debt of his principal has a right of action to recover the sum so paid. The principal is not obligated to his surety until his surety has made a payment. The surety's right of action accrues at the time of payment, not before. Plaintiff's cause of action was not barred, because all payments were made by it within three years of the institution of this action. *Saieed v. Abeyounis,* 217 N.C. 644, 9 S.E. 2d 399; *Pritchard v. R.R.,* 166 N.C. 532, 82 S.E. 875; *Deaver v. Carter,* 34 N.C. 267; *Sherrod v. Woodard,* 15 N.C. 360; 54 C.J.S. 107.

The bond given by defendant Fidelity was conditioned on Gibbs' payment of "all sums as specified by section 22 of the North Carolina Truck Act of 1947." The statute referred to is now codified as G.S. 62-121.26. It requires as a condition precedent to Commission's approval of the sale of a motor carrier's franchise a bond from the seller conditioned for the payment of (1) taxes, (2) wages due employees of the seller, (3) unremitted C.O.D. collections due seller, (4) "for loss or damage of goods transported or received for transportation," (5) overcharge on property transported, and (6) for interline accounts to other carriers.

Plaintiff as surety was obligated to only one class of Gibbs' creditors —those having claims originating from a contract of carriage. Fidelity

as surety was obligated for six classes. The fourth class, for which Fidelity obligated itself, was the identical class for which plaintiff was obligated. Any claimant asserting a loss resulting from Gibbs' breach of his contract of carriage could have required plaintiff or Fidelity to pay the loss. Plaintiff and Fidelity were, as to such claimants, co-sureties.

Equity and law (G.S. 26-5) afford a right to one surety, who has paid a debt for which he and another are equally liable, to call on the other for contribution. *Adams v. Adams,* 212 N.C. 337, 193 S.E. 661; *Fowle v. McLean,* 168 N.C. 537, 84 S.E. 852; *Smith v. Carr,* 128 N.C. 150; *Peebles v. Gay,* 115 N.C. 38.

But plaintiff does not seek to hold Fidelity obligated to contribute its share of the monies expended by plaintiff in discharging obligations for which both were liable. What it seeks is in effect the right to make Fidelity pay the sums loaned or advanced for Gibbs to discharge his debts. Plaintiff's contention that when it paid claimants, it became an assignee of their rights which it could enforce is, for the reason given in denying defendant's plea of the statute of limitations, not well founded. Fidelity did not, by statutory requirement or the language of its bond, obligate itself to indemnify Gibbs or his other surety.

The case was not tried or argued on the theory that Fidelity was a cosurety and hence required to contribute. Plaintiff has failed to establish the asserted liability of Fidelity.

As to defendant Gibbs—Affirmed.

As to defendant Fidelity—Reversed.