## FINCH v. BARNES

[102 N.C. App. 733 (1991)]

Affirmed.

Judges WELLS and WYNN concur.

---

KEITH G. FINCH, PLAINTIFF v. J. J. BARNES, JR., DEFENDANT

No. 9011SC824

(Filed 7 May 1991)

1. **Limitation of Actions § 4 (NCI3d); Principal and Surety § 10 (NCI3d) — action for contribution among sureties — statute of limitations**

   The statute of limitations applicable to an action for contribution among co-indemnitors or sureties is N.C.G.S. § 1-52(2), which provides that an action upon a liability created by statute must be brought within three years. Although this action has a common law origin, it has been a statutory right since 1807.

   **Am Jur 2d, Contribution § 101.**

   **What statute of limitations covers action for indemnity. 57 ALR3d 833.**

2. **Principal and Surety § 10 (NCI3d); Limitation of Actions § 4 (NCI3d) — action for contribution among sureties — statute of limitations**

   The trial court erred by not granting defendant's motion to dismiss an action for contribution among sureties where the evidence showed that if plaintiff paid Mid-South's debt, he did so by making loans to Mid-South; the last of those loans was made on 7 September 1984; and this action was filed on 15 April 1988. It is clear that plaintiff's claim arose when he paid the debts of his principal, Mid-South, and there is no legal authority that would toll the statute of limitations because plaintiff's loans kept Mid-South afloat and cut the potential losses, or because the amount of the loss could not be known until Mid-South's losses were settled.

   **Am Jur 2d, Contribution § 101.**

**What statute of limitations covers action for indemnity.
57 ALR3d 833.**

Judge GREENE dissenting.

APPEAL by defendant from judgment filed 16 February 1990
in HARNETT County Superior Court by *Judge Coy E. Brewer, Jr.*
Heard in the Court of Appeals 13 February 1991.

Plaintiff brought this action to recover funds allegedly due
him from defendant pursuant to an indemnity agreement. The ac-
tion was tried before the court without a jury. Following trial,
the court made findings of fact, entered conclusions of law and
entered judgment for plaintiff.

At trial, the evidence tended to show the following circumstances
and events. On 31 January 1978 Mid-South Construction, Inc.,
[hereinafter Mid-South], entered into a contract with plaintiff and
defendant whereby plaintiff and defendant agreed to assist Mid-
South to acquire bonding for certain construction contracts. In ex-
change for their assistance, Mid-South agreed to pay plaintiff and
defendant four percent (4%) of the contract price for each contract
obtained. In 1981 Mid-South decided to apply for a public construc-
tion project in Charlotte which required a surety bond. On 20
March 1981 plaintiff, defendant, and Mid-South executed an applica-
tion for a performance and payment bond and indemnity agreement
to Seaboard Surety Company, [hereinafter Seaboard], in the amount
of $3,942,700.00. Plaintiff, defendant, and Mid-South agreed to joint-
ly and severally indemnify and save harmless Seaboard from any
loss it might sustain by reasons of having executed the performance
and payment bond. Seaboard executed and delivered to the Charlotte
Housing Authority a performance and payment bond for Mid-South
guaranteeing the payment of creditors and guaranteeing the per-
formance of the Charlotte project.

Mid-South began to lose money during the course of construct-
ing the Charlotte project and was unable to pay certain bills owed
to bonded creditors. As a result, several creditors filed lawsuits
against Mid-South and Seaboard. From 7 September 1982 until
19 September 1984, plaintiff made a series of loans to Mid-South
which Mid-South used to pay its bonded creditors and prevent
Seaboard from taking over the Charlotte project, including
$100,000.00 to cover the $100,000.00 Mid-South borrowed from one
of its other construction projects in Raleigh to pay creditors of

the Charlotte project. Although plaintiff requested defendant to do the same, defendant made no such loans. Mid-South repaid plaintiff all but the sum of $140,000.00. Plaintiff and defendant each paid $27,815.04 to indemnify Seaboard in settling these lawsuits. The parties settled the last suit on 22 November 1985. Mid-South also filed a lawsuit for breach of contract against the City of Charlotte alleging damages of $300,000.00. Mid-South settled its suit against the City of Charlotte in December 1985 for $91,000.00. After paying costs and attorneys fees, Mid-South divided the remaining $50,000.00 settlement proceeds between plaintiff and defendant. Thereafter, Mid-South went out of business and its assets were sold to satisfy Mid-South's indebtedness to various banks. The net proceeds of $54,000.00 were paid to the plaintiff.

Mid-South's CPA testified that the Charlotte project lost $231,524.32. The president of Mid-South also testified that without plaintiff's loans, the surety would have taken over the project at a loss to the parties of over $500,000.00.

On 15 April 1988 plaintiff filed this action for contribution, seeking reimbursement from defendant as co-indemnitor for the funds loaned to Mid-South. In a judgment filed 16 February 1990, the trial court found that plaintiff's loans to Mid-South inured to defendant's benefit and represented the most commercially efficient means of minimizing Mid-South's loss on the Charlotte project. Plaintiff's loans allowed Mid-South to operate as a going concern and complete the Charlotte project. Had plaintiff not made these loans to Mid-South, Mid-South would have defaulted in its contract and Seaboard would have taken over the project at a loss to Mid-South of over $400,000.00. The court found that plaintiff had paid unreimbursed funds to Mid-South in the amount of $140,000.00. The court concluded that defendant was entitled to a credit of $27,000.00, representing one-half of the proceeds paid to plaintiff after liquidation of Mid-South's assets. The court ordered that defendant pay to plaintiff $43,000.00 plus interest from 1 December 1985. Defendant appeals.

*Bryan, Jones, Johnson & Snow, by James M. Johnson, for plaintiff-appellee.*

*Barfield and Jenkins, P.A., by K. Douglas Barfield, for defendant-appellant.*

FINCH v. BARNES

[102 N.C. App. 733 (1991)]

WELLS, Judge.

The dispositive question presented in this appeal is whether the trial court erred in not allowing defendant's motion to dismiss because the evidence at trial showed that plaintiff's claim was barred by the three-year statute of limitations set out in N.C. Gen. Stat. § 1-52 (1983). We agree and reverse the trial court's judgment.

[1]    The initial inquiry is whether G.S. § 1-52 is applicable. While the right to contribution among co-indemnitors or sureties has common law origin, *Insurance Co. v. Gibbs*, 260 N.C. 681, 133 S.E.2d 669 (1963), since 1807 it has been a statutory right in this state under the provisions of G.S. § 26-5, *Contributions among sureties* (1986). In *Lancaster v. Stanfield*, 191 N.C. 340, 132 S.E. 21 (1926), a contribution among sureties case, our Supreme Court recognized (without discussion) that the three-year statute of limitations applied in that case. We therefore hold that the applicable statute in this case is G.S. § 1-52(2), which provides that an action upon a liability created by statute must be brought within three years.

[2]    The next inquiry is when the statute began to run against plaintiff's claim. In *Lancaster v. Stanfield, supra*, the court stated the applicable rule as follows: "Whether or not plaintiffs' action for contribution is barred by the statute of limitations depends upon the date on which the [plaintiffs'] cause of action accrued, to wit, the date on which plaintiffs paid the amount for which they demand . . . contribution." In an analogous case, *Insurance Co. v. Gibbs, supra*, our Supreme Court held that a surety's right to recover for the payments of the debt of his principal accrues at the time of payment [of his principals' debt]. This Court has held that an action for indemnity may not be commenced against a third party until payment and satisfaction of the debt. *See Hager v. Equipment Co.*, 17 N.C. App. 489, 195 S.E.2d 54 (1973), and cases cited and relied upon therein. *See also Bumgarner v. Tomblin*, 63 N.C. App. 636, 306 S.E.2d 178 (1983). Thus, it is clear that plaintiff's claim in this action accrued or arose so as to start the running of the statute of limitations when he paid the debt or debts of his principal, Mid-South.

The evidence at trial showed that if plaintiff paid Mid-South's debt, he did so by making loans to Mid-South. The last of those loans was made on 7 September 1984. This action was filed on 15 April 1988, more than three years after plaintiff's claim accrued

FINCH v. BARNES

[102 N.C. App. 733 (1991)]

and his claim is therefore barred. The trial court erred in not granting defendant's motion to dismiss and the trial court's judgment must be reversed.

Plaintiff contends that his good business judgment in loans kept Mid-South afloat and thereby cut the potential losses to himself and defendant and that the amount of Mid-South's losses could not be known until its lawsuits were settled. Accepting this factual posture to be supported by the evidence at trial does not change the outcome of this case. We can find no authority in the law of this state that such events or circumstances would operate to toll the statute of limitations as to plaintiff's claim for contribution.

It is not necessary for us to discuss defendant's other assignments of error.

Reversed.

Judge WYNN concurs.

Judge GREENE dissents.

Judge GREENE dissenting.

I disagree with the majority's conclusion that the plaintiff's claim is barred by the statute of limitations. However, before reaching the statute of limitations issue, it must first be determined that plaintiff has a legal or equitable right to seek contribution from defendant.

'The general rule is that one who is *compelled* to *pay* or satisfy the whole or to bear more than his just share of a *common* burden or *obligation*, upon which several persons are equally liable or which they are bound to discharge, is entitled to contribution against the others to obtain from them payment of their respective shares. In other words, when any burden ought, from the relationship of the parties or in respect of property held by them, to be equally borne and each party is *in aequali jure*, contribution is due if one has been compelled to pay more than his share.'

*Nebel v. Nebel*, 223 N.C. 676, 684-85, 28 S.E.2d 207, 213 (1943) (citation omitted) (emphases added). The defendant contends that plaintiff's "loans" to Mid-South made during the construction proj-

ect were not "payments" of a "common obligation," but instead were "loans" that enured solely to the benefit of plaintiff. This argument presents issues of fact which were resolved by the trial court when it determined that the loans were in payment of creditors' claims on the Charlotte Housing Authority Project and "enured to defendant's benefit." In that there was competent evidence in the record to support these findings, this Court is bound. It is unnecessary to address the question of whether plaintiff's payments to Mid-South were "compelled," as defendant does not argue they were not compelled. Accordingly, on this record plaintiff has an equitable right to seek contribution from the defendant.

On the issue of the statute of limitations, I conclude that the plaintiff brought his claim in a timely fashion. " '[T]he statute of limitations does not begin to run against a claim for contribution *until* [the] plaintiff has discharged the common debt or has paid more than his share of it.' " *Lancaster v. Stanfield*, 191 N.C. 340, 344, 132 S.E. 21, 24 (1926) (citation omitted) (emphasis added); 54 C.J.S. *Limitations of Actions* § 206 (1987). It would have been impossible to determine whether the plaintiff had discharged the common debt or had paid more than his share of the debt prior to the final settlement of all the claims of the debts incurred by Mid-South in conjunction with the Charlotte Housing Authority Project. That settlement did not occur until November, 1985, and that was the date on which plaintiff's claim of contribution against the defendant accrued. Because the amount of the loss could not have been determined prior to the completion of the housing project and settlement of all claims arising from the construction of the project, any claim for contribution made prior to November, 1985, would have been premature. Therefore, plaintiff's claim for contribution, filed on 15 April 1988, was timely.

I have reviewed the defendant's remaining assignments of error and find them to be without merit. I would therefore affirm the judgment of the trial court.