SHIRLEY T. TIDWELL v. DAVID BOOKER

No. 37

(Filed 17 June 1976)

1. **Bastards § 1; Constitutional Law § 32— wilful failure to support illegitimate child — right to counsel**

The judgment in a 1963 criminal action against defendant for failure to support his illegitimate child is deemed valid since defendant did not appeal from that judgment; even if defendant was an indigent in 1963 and counsel was not appointed to represent him, the judgment is still valid since the offense of which defendant was convicted is of such a nature that appointment of counsel for, or intelligent waiver thereof by, an indigent defendant is not required by the Sixth and Fourteenth Amendments to the U. S. Constitution.

2. **Bastards § 8; Judgments § 37; Criminal Law § 26— wilful failure to support illegitimate child — subsequent prosecution — no double jeopardy — finding of paternity — res judicata in subsequent prosecution**

The criminal offense of wilful nonsupport of an illegitimate child by a parent of the child may be repeated and, if it is, prosecution for the subsequent offense is not barred by the prosecution for the former offense on the theory of double jeopardy; however, upon such subsequent prosecution of the alleged father, the question of paternity, necessarily determined against him in the former criminal action, need not be re-litigated, that question being *res judicata*.

3. **Evidence § 22— conviction in criminal case — subsequent action for damages — evidence of conviction inadmissible**

It is the general rule in this jurisdiction that, in a civil action for damages, evidence of the defendant's conviction in a criminal prosecution for the very acts which constitute the basis of the alleged liability in the civil action is not admissible, the defendant having entered a plea of "not guilty" in the criminal action.

4. **Bastards § 1— wilful failure to support illegitimate child — paternity issue incidental**

The question of paternity is incidental to the prosecution for the crime of nonsupport, but it is incidental only in the sense that proof of paternity is not proof of wilful nonsupport of the child; however, an affirmative answer to the question of paternity is an indispensable prerequisite to the defendant's conviction on the criminal charge. G.S. 49-7.

5. **Bastards § 3— wilful failure to support illegitimate child — State as party in criminal prosecution**

In no sense is the State a mere nominal party in a criminal prosecution under G.S. 49-2 for wilful failure to support an illegitimate child, nor is the State in privity with the mother or the child; rather, its interest, which is separate and distinct from that of the mother, is in the prevention of the child's becoming a charge upon the State so as to require the State, itself, to support the child.

Tidwell v. Booker

6. **Bastards §§ 3, 8; Judgments § 44— nonsupport prosecution — subsequent civil action for child support — no privity of parties — no estoppel to deny paternity**

Since the parties in a prior criminal prosecution for wilful failure to support an illegitimate child and the parties in this civil action to have defendant declared the father of plaintiff's illegitimate child and to require child support of defendant are not the same, and the State and the plaintiff in this civil action are not in privity, the defendant is not estopped in the present action to deny paternity of plaintiff's illegitimate child, though the question of paternity was answered in the affirmative in the prior criminal prosecution.

7. **Parent and Child § 7— illegitimate child — duty of mother and father to support upon finding of paternity**

If and when it is properly determined in this civil action for child support that defendant is the father of plaintiff's illegitimate child, the rights, duties and obligations of the plaintiff and the defendant with regard to the support of the child will be the same, and may be enforced in the same manner, as if she were the legitimate child of the plaintiff and the defendant. G.S. 49-15.

8. **Parent and Child § 7— child support — father primarily responsible — mother secondarily responsible**

G.S. 50-13.4(b) imposes upon the father the primary duty to support a child, the mother's obligation being secondary.

9. **Principal and Surety § 11— default of party primarily liable for obligation — action for reimbursement by party secondarily liable proper**

A party secondarily liable for the payment of an obligation, who is compelled by the default of the party primarily liable therefor to pay it, may, by action brought within the period of the applicable statute of limitations, compel the party primarily liable to reimburse him for such expenditure.

10. **Bastards § 10— illegitimate child — sums for support expended by mother — action for reimbursement — three year statute of limitations**

An action to enforce the liability of the father to reimburse the mother of an illegitimate child for expenditures reasonably incurred in the support of such child is barred after three years, but each such expenditure by the mother creates in her a new right to reimbursement; therefore, upon a proper determination by the district court that the defendant is the father of plaintiff's illegitimate child, the court may enter an order requiring defendant to reimburse plaintiff for reasonably necessary expenditures made by her for the support of the child on and after October 9, 1971, plaintiff having instituted this action on October 9, 1974.

11. **Attorney and Client § 7; Bastards § 10— action for child support — when attorney's fees recoverable**

G.S. 50-13.6 providing for payment of attorney's fees in an action for child support applies to a proceeding to compel the future support of the child, not to a proceeding to compel reimbursement for past payments made by a person secondarily liable for such child's support.

---

Tidwell v. Booker

---

Justice EXUM dissenting.

Justices HUSKINS and MOORE join in the dissenting opinion.

ON *certiorari* to the Court of Appeals to review its decision, reported in 27 N.C. App. 435, 219 S.E. 2d 648, affirming judgments of the District Court of MECKLENBURG in favor of the plaintiff.

On 18 December 1963, Shirley Tidwell swore out a warrant in the Domestic Relations Court of Mecklenburg County charging David Booker with the criminal offense of failing and refusing to provide adequate support for his illegitimate child, Clauda (sic) Ann, born 17 November 1963 to Shirley Tidwell, then unmarried. In that proceeding Judge Gatling of the Domestic Relations and Juvenile Court entered judgment 20 December 1963, reciting:

"The Defendant submitted a plea of not guilty.

"The Court finds as a fact, and the defendant admits, that he is the father of a child, Clauda (sic) Ann, born out of wedlock to the prosecuting witness, November 17, 1963.

"The Court entered a verdict of GUILTY."

The judgment was that the defendant be confined for a period of six months under the supervision of the State Prison Department, but the sentence was suspended, with the consent of the defendant, upon condition that he pay into the court each week "8.00 for the support of his child born out of wedlock, pending further orders."

From that judgment no appeal was taken. Pursuant thereto the defendant, David Booker, paid into the court eleven payments over a period of two years, totaling $139.00.

In 9 October 1974, the plaintiff, Shirley Tidwell, instituted the present action in the District Court of Mecklenburg County, filing her complaint consisting of two claims for relief. First, the complaint alleges: The defendant, David Booker, is the biological father of the minor child, Claudia Ann Tidwell, the plaintiff being the mother; the defendant previously admitted paternity in open court and the Domestic Relations and Juvenile Court found as a fact that he is the father of the child in the above mentioned judgment; the defendant has provided "some support and maintenance" for the benefit of the child within

Tidwell v. Booker

three years next preceding the commencement of this action, but "on the whole has failed to provide for the support and maintenance of said child." Second, the complaint alleges: The child has been and is now under the direct control, care and supervision of the plaintiff; since the 1963 judgment, the defendant has made payments totaling $139.00 for the support and maintenance of the child, has provided toys and clothing of approximately $100.00 in value and has made cash payments direct to the plaintiff in the approximate amount of $72.00, the last such support being furnished in February 1974; otherwise, the defendant has refused to provide for the support and maintenance of the child; except as above mentioned, the plaintiff has provided the support and maintenance for the child, the total expended by her for this purpose since the entry of the 1963 judgment being $4,169; the defendant is gainfully employed and owns property, including real property in Mecklenburg County, and is able to pay a reasonable sum for the support and maintenance of the child; the reasonable needs of the child for such support are $50.00 per week; the plaintiff, an interested party acting in good faith, has insufficient means to defray the expenses of the action and is entitled to a reasonable sum from the defendant for attorney's fees.

Upon the first claim, the plaintiff prayed: "That Defendant be declared the biological father of Claudia Ann Tidwell pursuant to the provisions of North Carolina General Statute § 49-14 *et seq;* that Defendant be taxed with the costs of this action; and for such further relief as may seem proper." Upon the second cause of action, the plaintiff prayed: "That Defendant be ordered to pay the sum of $4,169 to Plaintiff as lump sum support which Plaintiff has been required to provide said child because of Defendant's refusal to do so; that Defendant be ordered to pay $50.00 each week for the continued support of said child, Claudia Ann Tidwell; that Defendant be taxed with the costs of this action; that Defendant be ordered to pay a reasonable sum to Plaintiff's attorney for representation in this matter; and for such further relief as may seem proper."

On 9 October 1974, the same day the complaint was filed, Robinson, D.J., entered an order reciting that "the plaintiff has instituted an action pursuant to the provisions of Chapter 50 of the General Statutes of North Carolina," and setting the matter for hearing at a non-jury session of the District Court

Tidwell v. Booker

and ordering the defendant to file an affidavit showing his financial standing.

On 23 December 1974, the defendant filed answer in which he demanded a jury trial and alleged: Failure of the complaint to state a cause of action upon which relief can be granted; both Claim I and Claim II in the complaint are barred by the three year statute of limitations; a denial of paternity; a denial of any admission by him in open court (in the 1963 proceeding) that he is the father; an assertion that he was not represented in the 1963 proceeding by counsel and, being then an indigent, was entitled to have counsel, which right he did not intelligently waive; that he was not advised in that proceeding of his right to appeal from the said judgment and, therefore, the 1963 proceeding "cannot properly and lawfully be used against him in this subsequent civil proceeding"; and "the Plaintiff or the said minor child have (sic) no claim against him in this action for any amounts which were due or might have been due pursuant to any terms or conditions or any matters in said criminal action in this particular action"; a denial of his present ability to provide any support for the said child, he having a wife and family dependent upon him for their support and a limited income from his employment.

On 3 January 1975, the defendant filed a motion reciting that this is an action pursuant to G.S. 49-14 *et seq,* that the defendant has denied paternity and that any hearing or order prior to an adjudication of paternity in this action would be irregular and improper, this not being an action pursuant to Chapter 50 of the General Statutes. For these reasons, the defendant moved that no order be entered in this action requiring the defendant to provide support for the child "until this Defendant has properly been adjudicated the father of said child in this action."

The matter came on to be heard before Robinson, D.J., without a jury. He entered an order, filed 27 January 1975, reciting that such hearing was limited to determination of the matters of "continuing periodic support for said child and an award of counsel fees in connection therewith," the matter of the alleged lump sum for past arrearages to be heard by the court at a later date. The order of Judge Robinson contained detailed

Tidwell v. Booker

findings of fact substantially in accord with the allegations of the complaint, including the following:

"8. Defendant was not represented by counsel at said trial on December 20, 1963; and, while Defendant has made conclusory allegations and statements that he was indigent at the time of said trial, Defendant has not alleged any facts or offered any evidence which would tend to support a conclusion that he was indigent at that time; and, Plaintiff has offered evidence that Defendant was not indigent at that time.

"9. Defendant has not alleged any facts or offered any evidence in support of his conclusory statements upon which this Court can determine whether he was effectively denied any right to counsel.

*   *   *

"12. As a result of his conviction on December 20, 1963 for violation of NCGS § 49-2, Defendant was not imprisoned; and, the suspended sentence imposed by the Court in its judgment on said date cannot now be revoked and an active sentence imposed; and, Defendant will never have to serve any portion of the sentence which was suspended by said Court on December 20, 1963.

*   *   *

"17. The factual issue of Defendant's paternity of said minor child, Claudia Ann Tidwell, was finally adjudicated in [the 1963 proceeding].

"18. Defendant is the biological father of said child.

"19. Said minor child has been and is now residing with Plaintiff.

"20. Defendant has provided some support and maintenance for said minor child within three years immediately prior to the commencement of this action.

"21. At the time of the institution of this action, Defendant was not providing any support or maintenance to or for said minor child; nor is he doing so now.

*   *   *

"The reasonable expenses for the support and maintenance of said minor child amount to $52.00 per week, at the present time.

Tidwell v. Booker

* * *

"34. Defendant, as father of said minor child, is primarily liable for the support and maintenance of said minor child.

"35. Considering the estates, earnings, and conditions of the parties and the accustomed standard of living and needs of said minor child and the parties, the sum of $33 per week is a fair and reasonable amount for Defendant to pay to partially meet the needs of said minor child for her health, education, maintenance and support.

"36. Defendant is fully capable of paying and is able to pay the sum of $33 per week for the partial support and maintenance of said minor child."

Robinson, D.J., thereupon ordered that the defendant pay $33.00 per week for the partial support of the child and pay $350 as a fee to the plaintiff's attorney for his representation of the plaintiff and the child in this action.

From this order the defendant appealed to the Court of Appeals. Robinson, D.J., made appeal entries allowing the defendant 45 days in which to prepare and serve his statement of the case on appeal and fixing a supersedeas bond and an appeal bond.

On 14 February 1975, the plaintiff moved to dismiss the appeal "for the reason that said order is not a final judgment or other order from which Defendant has a right to appeal."

On 18 February 1975, the plaintiff moved for summary judgment on her claim for a lump sum award of $4,169 for support furnished by her to the child in the past because of the defendant's refusal to support the child, and for a reasonable sum to her attorney as a fee for representing her in connection with that claim. At the same time, she again moved to dismiss the defendant's appeal from the order entered by Robinson, D.J., on 27 January 1975, the ground for this motion to dismiss being that the defendant had failed to serve on the plaintiff a statement of the evidence and proceedings from available sources as he was required to do by law, no stenographic record of the hearing before Robinson, D.J., having been taken.

On 27 March 1975, the plaintiff filed a third motion to dismiss the defendant's said appeal and therein prayed for the

Tidwell v. Booker

award of an additional fee to the plaintiff's attorney in the amount of $750 for his representation of the plaintiff and the said child in preparing to defend against the said appeal.

On 16 April 1975, Hicks, D.J., heard the matter upon the above motions and entered an order dismissing the appeal of the defendant from the above mentioned order by Robinson, D.J., directing the defendant to pay $750 to the plaintiff's attorney for his representation of the plaintiff and the child in opposition to the said appeal and adjudging that the plaintiff recover from the defendant $4,169, together with interest and costs of the action. This order by Hicks, D.J., contained numerous findings of fact, included the following:

"3. Said Order of the Honorable William G. Robinson adjudicated only one of Plaintiff's two claims, and said Order did not contain any finding or determination which made said Order immediately appealable under Rule 54(b) of the North Carolina Rules of Civil Procedure.

\*    \*    \*

"6. Defendant did not prepare, file, and serve upon Plaintiff or her counsel within ten days of the filing of said Appeal Entries And Exceptions a statement of the evidence taken and proceedings had at the hearing held in this action on January 21, 1975.

\*    \*    \*

"8. \* \* \* there has never been filed any complete statement of Evidence Taken and Proceedings Had at said hearing on January 21, 1975.

\*    \*    \*

"11. No extension of time within which to serve Defendant's Statement of Case on Appeal has been sought or obtained by Defendant or any of his counsel.

\*    \*    \*

"20. There is no genuine issue as to the fact that since the entry of said Judgment of December 20, 1963 [the above judgment of Gatling, J., imposing a suspended sentence for nonsupport of the child], Defendant has been under a duty to provide for the support and maintenance of said minor child.

Tidwell v. Booker

* * *

"22. * * * Defendant has provided some clothing or money to or for the benefit of said minor child within three years next preceding the commencement of this action.

* * *

"23. * * * Defendant has failed and refused to provide for the support and maintenance of said minor child.

"24. There is no genuine issue as to the facts that since the entry of said Judgment on December 20, 1963, Plaintiff has provided the support and maintenance of said minor child, and that she has expended $4,169 of her own money for the support and maintenance of said minor child on account of Defendant's refusal to so provide."

Hicks, D.J., concluded in his order that plaintiff's counsel is not entitled to any award for his fee for representation of the plaintiff in connection with her claim for the lump sum reimbursement of her expenditures for the support of the child, and no fee for those services was ordered to be paid by the defendant.

*Hicks & Harris by Tate K. Sterrett for plaintiff.*

*Reginald L. Yates for defendant.*

LAKE, Justice.

G.S. 49-2 provides that any parent, mother or father, who wilfully neglects or refuses to support his or her illegitimate child is guilty of a misdemeanor. This statute, in effect when Claudia Ann was conceived, imposed, both upon the plaintiff and the defendant, a duty to support the child. Its purpose is not to confer rights upon either the mother or the father but to protect the child and to protect the State against the child's becoming a public charge. Prosecution of the alleged father for the violation of this statute may be initiated by the mother, but her joining therein is not a prerequisite to the validity of the prosecution. G.S. 49-5. In such criminal proceeding, "the court before which the matter may be brought *shall* determine whether or not the defendant is a parent of the child *on whose behalf* the proceeding is instituted." G.S. 49-7 (Emphasis added.)

In 1963, upon a warrant valid in form, in a court of competent jurisdiction, the defendant was charged with violation

Tidwell v. Booker

of G.S. 49-2 by his failure and refusal to provide support for Claudia Ann, then one month old. Despite his plea of "not guilty" that court found as a fact that the defendant is the father of Claudia Ann and found the defendant guilty of the offense of failure or refusal to support the child.

The 1963 judgment recites, parenthetically, that the defendant admitted he was the child's father, which statement the defendant now asserts was incorrect. The judgment does not rest upon this statement but upon the court's finding of his paternity as a fact despite his plea of not guilty. Neither the judgment nor the record presently before us gives any indication as to the nature or evidence of the alleged admission, whether it was in the course of testimony by the defendant or otherwise. Such admission is not inconsistent with his plea of "not guilty," for the criminal offense is not committed by the begetting but by the wilful nonsupport of the child. *State v. Ellis*, 262 N.C. 446, 137 S.E. 2d 840 (1964).

[1] From the 1963 judgment the defendant did not appeal. On the contrary, the judgment recites that he consented to the terms upon which sentence was suspended. The defendant now asserts that this judgment was and is invalid because he was then an indigent and counsel was not appointed to represent him. Nothing in the record before us supports his contention that he was an indigent in 1963. In *State v. Green*, 277 ·N.C. 188, 176 S.E. 2d 756 (1970), this Court held that the offense of which this defendant was so convicted in 1963 is of such a nature that appointment of counsel for, or intelligent waiver thereof by, an indigent defendant is not required by the Sixth and Fourteenth Amendments to the United States Constitution. The defendant having failed to appeal therefrom, the judgment in the 1963 criminal action is deemed valid.

[2] The criminal offense of wilful nonsupport of an illegitimate child by a parent of the child may be repeated and, if it is, prosecution for the subsequent offense is not barred by the prosecution for the former offense on the theory of double jeopardy. *State v. Robinson*, 236 N.C. 408, 72 S.E. 2d 857 (1952). Upon such subsequent prosecution of the alleged father, the question of paternity, necessarily determined against him in the former criminal action, need not be re-litigated, that question being *res judicata. State v. Ellis, supra.* In the two criminal actions there is identity of parties and identity of this issue. It is im-

material whether the same person swore out the two warrants. It is also immaterial whether the same witnesses testified at the two trials.

G.S. 49-14 authorizes the bringing of a civil action to establish the paternity of an illegitimate child within three years after the last payment by the alleged father for the support of the child. The present action was brought within that time. In such civil action, just as in a criminal action brought under G.S. 49-2, paternity must be proved beyond a reasonable doubt. G.S. 49-14(b). Such proceeding may be instituted by the mother. G.S. 49-16(1). *"Upon and after the establishment of paternity of an illegitimate child pursuant to G.S. 49-14, the rights, duties, and obligations of the mother and the father so established, with regard to support and custody of the child, shall be the same, and may be determined and enforced in the same manner, as if the child were the legitimate child of such father and mother."* G.S. 49-15. (Emphasis added.) The defendant contends that this statute requires a determination of the question of paternity in the civil action and that, on the issue of paternity, he was entitled to a jury trial, having demanded such trial in his answer.

[3] It is, unquestionably, the general rule in this jurisdiction that, in a civil action for damages, evidence of the defendant's conviction in a criminal prosecution for the very acts which constitute the basis of the alleged liability in the civil action is not admissible, the defendant having entered a plea of "not guilty" in the criminal action. *Beanblossom v. Thomas,* 266 N.C. 181, 146 S.E. 2d 36 (1966). As Justice Parker, later Chief Justice, said in *Trust Co. v. Pollard,* 256 N.C. 77, 123 S.E. 2d 104 (1961) : "The general and traditional rule supported by a great majority of the jurisdictions is that, in the absence of a statutory provision to the contrary, evidence of a conviction and of a judgment therein, or of an acquittal, rendered in a criminal prosecution, is not admissible in evidence in a purely civil action to establish the truth of the facts on which the verdict of guilty or of acquittal was rendered, or when there is a verdict of acquittal to constitute a bar to a subsequent civil action based on the same facts. While the same facts may be involved in two cases, one civil and the other criminal, the parties are necessarily different, for, whereas one action is prosecuted by an individual, the other is maintained by the State."

---

**Tidwell v. Booker**

---

In *Taylor v. Taylor,* 257 N.C. 130, 125 S.E. 2d 373 (1962), this doctrine was somewhat limited, over the dissent of Justice Higgins. There the Court held a prior conviction of a husband on the charge of wilful abandonment of his wife without providing adequate support for her is a bar to his subsequent action for absolute divorce on the ground of the separation arising from such abandonment. Justice Bobbitt, later Chief Justice, speaking for the majority, said: "Technically, the parties in the criminal prosecution were different. Even so, the issue was identical, and the plaintiff, in the criminal action, had his day in court with reference to such issue. * * * While the conduct for which the plaintiff was convicted constitutes an offense against society, such conduct was made criminal to afford protection to the wilfully abandoned wife. In such criminal prosecution, the wife, although not technically a party, is the person upon whose testimony the State, in large measure, must rely; and the criminal prosecution is based on and arises from the rights and obligations subsisting between the prosecutrix (wife) and the defendant (husband)." The basis for the dissent by Justice Higgins was: "The first requisite to a valid plea of *res judicata* is identity of parties. (Citations omitted.) In the criminal case the State of North Carolina was the plaintiff. Mrs. Taylor may have been a witness, but she was not a party. *Res judicata* binds parties—not witnesses."

In virtually all, if not all, cases in which a civil action for damages grows out of criminal conduct of the defendant the purpose of the criminal statute is to discourage conduct likely to cause injury to the class of persons to which the plaintiff in the civil action belongs. For example, the statutes making speeding, driving on the wrong side of the road and driving while intoxicated (see *Beanblossom v. Thomas, supra)* criminal offenses are designed to protect other users of the highway from injury to their persons and damage to their property. Usually, the injured person, if he or she survives, is the principal witness for the State in a criminal prosecution. The present case, the Taylor case and the Beanblossom case cannot be distinguished on these grounds. Furthermore, in the prosecution of a parent for nonsupport of an illegitimate child, the State is acting, at least in part, for the protection of its own financial interest since it thereby seeks to prevent the child from becoming a public charge.

[4] This Court has said on numerous occasions that the question of paternity is "incidental to the prosecution for the crime of nonsupport." *State v. Green, supra; State v. Ellis, supra; State v. Robinson, supra; State v. Summerlin,* 224 N.C. 178, 29 S.E. 2d 462 (1944). The question of paternity is "incidental" to the criminal offense alleged only in the sense that proof of paternity is not proof of wilful nonsupport of the child. An affirmative answer to the question of paternity is, however, an indispensable prerequisite to the defendant's conviction on the criminal charge. G.S. 49-7. The finding by the court in the criminal action that the defendant is the father of Claudia Ann was, therefore, not a mere dictum or the determination of an insignificant matter. It was the judicial determination of an issue properly and necessarily before the court in the criminal proceeding to which the defendant was a party and in the trial of which he had his "day in court." The same may, however, be said of the questions of speeding, driving on the wrong side of the road and driving under the influence of intoxicating liquor which were involved in *Beanblossom v. Thomas, supra.* Thus, this is not a basis for distinction between the Taylor case, the Beanblossom case and the present case.

Technically, *Beanblossom v. Thomas, supra,* and *Trust Co. v. Pollard, supra,* did not involve the question of the conclusiveness, in a subsequent civil action, of the defendant's conviction in a prior criminal proceeding of the precise conduct which is the basis for the civil suit. Those cases involved the admissibility of evidence of such previous conviction, the basis of the objection to such evidence being the hearsay rule and the opinion rule, the former verdict being a statement of the first jury's opinion. However, a plea of *res judicata* must be supported by the introduction of evidence of the former judgment and it is hardly conceivable that the Beanblossom and Pollard cases can be distinguished from the present case on this ground.

In *Trust Co. v. Pollard, supra,* this Court cited *Briggs v. Briggs,* 215 N.C. 78, 1 S.E. 2d 118 (1939), as holding that a judgment in a criminal action for abandonment is not *res judicata* as to the wife's right to counsel fees and support, pending litigation of a suit for divorce thereafter instituted by the husband, the defendant in the criminal action. An examination of the Briggs case, however, indicates that the criminal proceeding, relied upon by the husband as a bar to the wife's right to counsel fees *pendente lite* in the divorce action, was determined in his

favor on the ground that the statute of limitations had barred such criminal action, not upon a determination in the husband's favor of the merits of the question of abandonment. Thus, the Briggs case does not support the proposition for which it is cited in *Trust Co. v. Pollard, supra,* and is not helpful in determining the present case.

In *Allen v. Hunnicutt,* 230 N.C. 49, 52 S.E. 2d 18 (1949), this Court held that, as of that time (G.S. 49-14, et seq., not then having been enacted), an illegitimate child could not maintain a civil action to establish paternity and to compel the father to furnish the child support on the basis of the alleged relationship alone. The Court, speaking through Justice Barnhill, later Chief Justice, said that in the absence of such a statute the child could not maintain such action because: "The duty of a putative father to support his illegitimate child [i.e., the duty created by G.S. 49-2] was not created primarily for the benefit of the child. The legislation is social in nature and was enacted to prevent illegitimates from becoming public charges. The benefit to the child is incidental." *Accord: Jolly v. Queen,* 264 N.C. 711, 142 S.E. 2d 592 (1965).

In the present case, the Court of Appeals said:

"[T]he plaintiff wife, though not technically in control of a 1963 prosecution, was essential to its success as the prosecuting witness and in fact stood in the position of obvious beneficiary of its successful culmination. * * * In view of the unique nature of the two causes of action and the unique interrelationship of the State in the affairs of an illegitimate child and the mother of that child, the requisite privity of parties existed for purposes of mutuality and collateral estoppel. * * *

"Notwithstanding *Beanblossom,* we hold that the rules articulated in *Ellis* and *Clouch* are applicable to subsequent civil actions for willful failure to support a minor child where paternity was fully addressed in the prior criminal prosecution for willful failure to support. This holding is necessarily limited to the peculiar hybrid nature of the particular cause of action raised in these cases."

In *King v. Grindstaff,* 284 N.C. 348, 200 S.E. 2d 799 (1973), four members of the same family were killed or injured in an automobile collision. The two injured survivors, the only surviving members of the family, sued and recovered dam-

ages for their own personal injuries. Thereafter, the administrator of the two deceased passengers sued for their wrongful deaths. The two survivors, who had previously recovered judgments for their own injuries, were the sole beneficiaries of any recovery in the wrongful death actions. The lower court allowed summary judgment for the plaintiff administrator on the questions of liability, on the basis of *res judicata,* leaving only the issue of damages for trial. This Court affirmed, saying:

> "Under a companion principle of *res judicata,* collateral estoppel by judgment, *parties and parties in privity with them*—even in unrelated causes of action—are precluded from retrying fully litigated issues that were decided in any prior determination and were necessary to the prior determination. * * *

> "To determine whether collateral estoppel applies in the present cases, it must first be decided whether the parties in these suits and those in the former Federal litigation are the same, or stand in privity to the parties in the former litigation. * * *

> " 'In an action to recover damages for wrongful death the real party in interest is the beneficiary under the statute for whom recovery is sought, and not the administrator.' * * * *Therefore,* we conclude that the requirement of identity of parties is met."

Thus, the determining factor in *King v. Grindstaff, supra,* was that the administrator, the plaintiff in the wrongful death action, was a nominal party only and had no beneficial interest in the action, the entire beneficial interest being in the survivors who were the plaintiffs in the former litigation. Thus, for all practical purposes, the parties to the two actions were the same.

"It is * * * well settled that the privity, which will create an estoppel by judgment against one not a party to the former action, denotes a mutual or successive relationship to the same right." *Kaylor v. Gallimore,* 269 N.C. 405, 408, 152 S.E. 2d 518 (1966). *Accord: Masters v. Dunstan,* 256 N.C. 520, 124 S.E. 2d 574 (1962) ; *Light Co. v. Insurance Co.,* 238 N.C. 679, 79 S.E. 2d 167 (1953) ; *Leary v. Land Bank,* 215 N.C. 501, 2 S.E. 2d 570 (1939) ; *Rabil v. Farris,* 213 N.C. 414, 196 S.E. 321 (1938).

Tidwell v. Booker

Another apparent exception to the requirement of identity of parties is found in the case of a plaintiff who loses his action for damages for negligence against the driver of an automobile and thereafter sues the employer of the driver on the theory of *respondeat superior*. Having litigated the issue of the driver's negligence unsuccessfully, such plaintiff may not again litigate that issue against the employer. The principal is not in privity with the agent. 5 Strong, N. C. Index 2d, Judgments, § 36, p. 72. The basis for this apparent exception to the general rule is that the principal's liability, if any, is derived from and wholly dependent upon liability of the agent. See: *Crosland-Cullen Co. v. Crosland*, 249 N.C. 167, 170, 105 S.E. 2d 655 (1958) ; *Leary v. Land Bank, supra.*

In *Crosland-Cullen Co. v. Crosland, supra,* the plaintiff first sued an insurance company to recover from it the proceeds of a policy of which the plaintiff was beneficiary, contending, against the defense of payment of the policy, that the insurance company had paid to one who claimed under a void assignment of the policy. In that action, judgment was rendered for the insurance company, i.e., that the assignment was valid and the payment to the assignee proper. Thereafter, the plaintiff sued the assignee on the ground that the assignee had received from the insurance company money which should have been paid to the plaintiff beneficiary. This Court held the second action was barred by the former judgment, saying this was an exception to the general rule requiring identity of parties and mutuality in determining a plea of *res judicata*. The Court, speaking through Justice Rodman, said the plaintiff having failed to establish any wrong done by the one primarily liable (the insurance company) could not thereafter hold the recipient of the money liable on the ground of money received which should have been paid to the plaintiff. In such case there would be the required privity between the successive defendants.

[5]   In no sense is the State a mere nominal party in a criminal prosecution under G.S. 49-2 for wilful failure to support an illegitimate child. The State is not in privity with the mother or the child. Its interest is separate and distinct from hers. Its interest is in the prevention of the child's becoming a charge upon the State so as to require the State, itself, to support the child. The State's right to proceed under this statute does not, as a matter of law, require the consent of the mother or of the child to the bringing of the proceeding however important to

its case may be the mother's cooperation as a witness. A release by the mother would not bar the State's criminal action.

In *Shaw v. Eaves,* 262 N.C. 656, 138 S.E. 2d 520 (1964), the Court held that when an additional defendant is joined by an original defendant for contribution in an action *ex delicto,* the plaintiff and the additional defendant are not adversaries in law, and a judgment holding the original defendant entitled to contribution against the additional defendant does not make the question of the additional defendant's negligence *res judicata* in a subsequent action between him and the original plaintiff. The Court said, "Estoppel by judgment must be mutual," and "An estoppel is mutual if the one taking advantage of the earlier adjudication would have been bound by it had it gone against him."

In the present case, the plaintiff mother swore out the warrant which initiated the criminal prosecution against the defendant and, presumably, was a witness for the State at the trial of that action. She was not, however, in control of the prosecution. The State was represented by its prosecuting attorney, not an attorney employed by the mother. She had no control of his handling of the trial. Had the criminal proceeding resulted in a finding that the defendant was not the father of Claudia Ann, the mother would not be barred thereby from bringing the present action. As Justice Higgins observed in his dissent in *Taylor v. Taylor, supra,* Estoppels by judgment run against parties, not witnesses. *Accord: Kaylor v. Gallimore, supra.*

[6] Thus, we conclude that, for the reason that the parties to the criminal and civil proceedings are not the same and the State and this plaintiff are not in privity, the defendant is not estopped in the present action to deny paternity of Claudia Ann. Until this question is determined in this civil action, the defendant may not properly be ordered herein to make payments for the future support of the child, or to reimburse the mother for expenses heretofore incurred by her in support of the child, or to pay an attorney's fee to the attorney for the mother. This action must, therefore, be remanded to the district court for determination by it of the question of paternity and, if that be determined adversely to the defendant, for the entry of such orders as may be appropriate concerning these other matters.

Since these questions will, necessarily, arise upon such further proceeding in the district court and the defendant, upon this appeal, has denied the authority of the district court to require him to reimburse the mother for such payments or to require him to pay a reasonable fee to the mother's attorney, we deem it advisable upon the present appeal to determine those matters also.

[7] If and when it is properly determined in this action that the defendant is the father of Claudia Ann, the "rights, duties, and obligations" of the plaintiff and the defendant with regard to the support of the child will be the same, and may be enforced in the same manner, as if she were the legitimate child of the plaintiff and the defendant. G.S. 49-15. Clearly, this statute contemplates that such rights may be determined and enforced in the action brought pursuant to G.S. 49-14 and does not contemplate the bringing of a separate action for that purpose pursuant to G.S. 50-13.1, et seq., which relates to the custody and support of legitimate children. G.S. 49-15 directs attention to G.S. Ch. 50 only for the purpose of determining what those rights and enforcement methods are.

[8] G.S. 50-13.4(b) provides:

"(b) In the absence of pleading and proof that circumstances of the case otherwise warrant, the father, the mother * * * shall be liable, *in that order,* for the support of a minor child. * * * " (Emphasis added.)

Thus, the statute imposes upon the father the primary duty to support the child, the mother's obligation being secondary. It is so declared, with reference to legitimate children in *Wells v. Wells,* 227 N.C. 614, 44 S.E. 2d 31 (1947), by Justice Winborne, later Chief Justice, speaking for this Court.

Thus, should it be properly determined, upon the retrial of this action, that the defendant is the father of Claudia Ann, the court may order the defendant to pay "to the person having custody of the child or any other proper person, agency, organization or institution, or to the court, for the benefit of such child" (G.S. 50-13.4(d)) payments for the future support of Claudia Ann "in such amount as to meet the reasonable needs of the child for health, education, and maintenance, having due regard to the estates, earnings, conditions, accustomed standard of living of the child and the parties, and other facts of the particular case." G.S. 50-13.4(c).

The duty of the father of an illegitimate child to support such child is not created by the judicial determination of paternity. That determination is merely a procedural prerequisite to the enforcement of the duty by legal action. The father's duty to support his child arises when the child is born. However, prior to the enactment of G.S. 49-15 by the Session Laws of 1967, Ch. 993, effective October 1, 1967, the duty of the mother of an illegitimate child to support such child was equal to that of the father and enforceable in the same manner. G.S. 49-2.

[9, 10]  A party secondarily liable for the payment of an obligation, who is compelled by the default of the party primarily liable therefor to pay it, may, by action brought within the period of the applicable statute of limitations, compel the party primarily liable to reimburse him for such expenditure. *Insurance Co. v. Gibbs,* 260 N.C. 681, 133 S.E. 2d 669 (1963) ; *Saieed v. Abeyounis,* 217 N.C. 644, 9 S.E. 2d 399 (1940) ; *Trust Co. v. York,* 199 N.C. 624, 155 S.E. 263 (1930). The liability of the father to reimburse the mother of an illegitimate child for expenditures reasonably incurred in the support of such child is a liability created by statute. G.S. 49-15. It is not a penalty or a forfeiture. Consequently, an action to enforce such liability is barred after three years. G.S. 1-52 (2). Each such expenditure by the mother creates in her a new right to reimbursement. The present action was instituted by the mother on October 9, 1974. Consequently, her right herein to judgment requiring reimbursement by the defendant, assuming his paternity is established, is limited to reimbursement for expenditures incurred by her on and after October 9, 1971. Upon a proper determination by the district court that the defendant is the father of Claudia Ann, the district court may enter an order requiring the defendant to reimburse the plaintiff for reasonably necessary expenditures by her for the support of the child on and after October 9, 1971.

[11]  G.S. 50-13.6 provides that in any action for the support of a minor child which, by virtue of G.S. 49-15, includes an illegitimate child whose paternity has been determined pursuant to G.S. 49-14, "The court may in its discretion order payment of reasonable attorney's fees to an interested party acting in good faith who has insufficient means to defray the expense of the suit," if the court finds as a fact that the party ordered to furnish support has refused to do so. We think the proper construction of this statute is that it applies to a proceeding to compel the future support of the child, not to a proceeding to

Tidwell v. Booker

compel reimbursement for past payments made by a person secondarily liable for such child's support. We note that in the judgment of the district court presently before us for review the defendant was not ordered to pay fees to the plaintiff's counsel for services rendered in connection with the plaintiff's claim for such reimbursement for past support supplied by her to the child. The amount of fees to be awarded rests in the sound discretion of the district court.

The judgment of the Court of Appeals is, therefore, reversed, and the matter is remanded to that court for the entry by it of an order further remanding it to the District Court of Mecklenburg County for further proceedings consistent with this opinion.

Reversed and remanded.

Justice EXUM dissenting.

I dissent from that portion of the majority opinion which holds that the determination in the 1963 criminal action of the issue of defendant's paternity was not *res judicata* in this civil action. The Restatement of Judgments § 85(1) (1942) states:

"Where a judgment is rendered in an action in which a party thereto properly acts on behalf of another, the other is

(a) bound by and entitled to the benefits of the rules of res judicata with reference to such of his interests as at the time are controlled by the party to the action;

(b) not bound by or entitled to the benefits of the rules of res judicata with reference to his interests not controlled by the party to the action."

In this case a judgment was rendered in 1963 in an action brought under General Statute 49-2 for wilful failure of defendant to provide adequate support for his illegitimate child. The party who brought the action (the State of North Carolina) properly acted on behalf of the mother. The mother had a direct, personal pecuniary interest in the outcome of the criminal litigation; for if the father could not have been required to support this child the legal duty to provide support would have fallen upon her. N. C. Gen. Stats. 49-2, 49-4. The fact that the

State of North Carolina was acting on its own behalf as guardian of the public purse did not preclude it from acting also on behalf of the mother. Therefore under the principle stated by the Restatement the mother (plaintiff) is entitled to the benefits of the rules of *res judicata* with reference to such of her interests as were *at the time* controlled by the State of North Carolina. At the time, 1963, *all* of her interests in this litigation were controlled by the state. She had no civil remedy. *State v. Robinson*, 245 N.C. 10, 95 S.E. 2d 126 (1956). Therefore she was both bound by and entitled to the benefits of *res judicata* with regard to questions of fact (here paternity) essential to the judgment which were actually litigated (here by plea of not guilty) and determined by the final judgment in 1963. The defendant is estopped by the criminal judgment to deny his paternity in the civil case.

*Taylor v. Taylor*, 257 N.C. 130, 125 S.E. 2d 373 (1962), which the majority overrules *sub silentio* is persuasive authority that there was sufficient mutuality of parties for the rules of *res judicata* to apply. *Taylor* is distinguishable only in that it involved a defensive use, while the instant case involves an offensive use, of the principle involved. But *King v. Grindstaff*, 284 N.C. 348, 200 S.E. 2d 799 (1973) seems to sanction the offensive use of the doctrine. *See* O. Max Gardner III, "Offensive Assertion of a Prior Judgment as Collateral Estoppel—A Sword in the Hands of the Plaintiff?" 52 N.C.L. Rev. 836 (1974).

Justices HUSKINS and MOORE join in this dissenting opinion.