STATE OF NORTH CAROLINA BY AND THROUGH ITS NEW BERN CHILD SUPPORT AGENCY, EX REL., SADIE W. LEWIS v. JAMES DANIEL LEWIS

No. 823DC402

(Filed 5 July 1983)

1. Judgments § 37.3— paternity—collateral estoppel applying

By reason of a prior criminal judgment against defendant for willful nonsupport, defendant should have been precluded from raising a paternity issue in his wife's subsequent civil action for child support. *A fortiori*, defendant's counterclaim for recovery of sums he had previously paid for the support of the children was properly dismissed for failure to state a claim upon which relief could be granted when the present action was brought for indemnification for public assistance.

**2. Rules of Civil Procedure § 12— motion to dismiss—ruling on merits erroneous**
>       Where the matter being considered before the trial court was the State's
> motion to dismiss defendant's counterclaim because it failed to state a claim
> for relief, the trial court erred in directing defendant to pay weekly child sup-
> port and to pay back support as ordered by a previous criminal judgment. A
> ruling on the merits cannot be made on a motion to dismiss for failure to state
> a claim for which relief could be granted.

APPEAL by plaintiff and defendant from *Rountree, Judge.*
Order entered 7 January 1982 in District Court, CARTERET Coun-
ty. Heard in the Court of Appeals 17 February 1983.

*Charles H. Turner, Jr., for plaintiff appellant.*

*Mason & Phillips, P.A., by L. Patten Mason, for defendant
appellant.*

BECTON, Judge.

I

The State instituted this action against defendant seeking (i)
indemnification for public assistance paid for the support of two
children born to defendant and Sadie W. Lewis, and (ii) an order
directing defendant to provide continuing support. In response,
defendant raised the defenses of collateral estoppel and *res
judicata* as to paternity, counterclaimed for reimbursement of
child support paid by him under a prior criminal court order, and
moved for blood grouping tests. Replying to the counterclaim, the
State alleged that defendant is estopped from denying paternity
and moved for a dismissal of the counterclaim and a denial of the
request for blood grouping tests.

In a 7 January 1982 order, the district court judge allowed
the State's motions and ordered defendant to pay child support
arrearages. Both parties appeal from this Order. An examination
of the prior legal actions involving the State, defendant and his
wife, Sadie Lewis, is necessary for an understanding of this ap-
peal.

II

Procedural and Factual History

On 23 March 1976, defendant was served with criminal sum-
mons charging him with willful neglect and refusal to support his

four children, a violation of N.C. Gen. Stat. § 14-322 (1981). These children were born to Sadie W. Lewis during her marriage to the defendant. Defendant was found guilty of this charge on 27 April 1976 and was ordered to pay weekly child support of $45.00.

On 15 October 1976 Ms. Lewis instituted a civil action against defendant for divorce from bed and board, custody of the four children and child support. No answer was filed. A default judgment was entered in this action on 3 December 1976 granting Ms. Lewis a divorce and custody and ordering defendant to pay weekly child support of $75.00. On 1 September 1977, Ms. Lewis filed a motion requesting the court to order defendant to appear and show cause why he should not be adjudged in contempt for failure to comply with the 3 December 1976 judgment. Upon receiving the show cause order, defendant moved the court to vacate the default judgment on grounds that he was never served with copies of the complaint, summons and judgment in the case. Defendant further alleged as a defense to his wife's action that blood grouping tests would show that the four children were not his but the "by-product of the vile and lascivious conduct of the Plaintiff [Ms. Lewis] throughout the marriage." After considering defendant's motion, the district court set aside the December 1976 judgment and allowed defendant time to file answer to his wife's complaint. In his answer defendant realleged that he was not the father of his wife's four children. On 19 January 1981 this civil action was dismissed with prejudice as a result of Ms. Lewis' failure to appear and prosecute.

On 14 January 1981, five days prior to the dismissal of the civil action between Ms. Lewis and defendant, the State, by and through the New Bern Child Support Agency, filed the action on appeal, seeking, among other things, indemnification for past public assistance paid for support of two of the parties' children.

### III

#### Issues and Summary of Holding

Did the trial court err (i) in concluding that defendant was estopped from denying paternity, (ii) in denying defendant's request for blood grouping tests, and (iii) in dismissing defendant's counterclaim for reimbursement of monies paid for child support pursuant to the 1976 criminal court order?

Relying on *Tidwell v. Booker*, 290 N.C. 98, 225 S.E. 2d 816 (1976) and *Smith v. Burden*, 31 N.C. App. 145, 228 S.E. 2d 662 (1976), defendant first contends that his prior criminal conviction of failure to support illegitimate children is not conclusive as to paternity in a subsequent civil action for support of the same children. On the basis of the analysis in Part IV, *infra*, neither *Tidwell* nor *Smith* provides support for defendant.

Defendant next contends that the dismissal with prejudice of his wife's subsequent civil action for divorce, custody and child support constitutes a judicial determination of paternity in defendant's favor since he filed an Answer specifically denying paternity in that civil action. Defendant relies upon the following language in *Barnes v. McGee*, 21 N.C. App. 287, 289, 204 S.E. 2d 203, 204 (1974) as support for this contention:

> 'Dismissal with prejudice, unless the court has made some other provision, is subject to the usual rules of res judicata and is effective *not only on the immediate parties but also on their privies.'* [Emphasis added.] (*Quoting* 9 Wright & Miller, Federal Practice and Procedure § 2367 (1971) p. 185-86.)

Although defendant correctly states the rule, he still can find no "Balm in Gilead."

## IV

Analysis

[1]  The dismissal, with prejudice, of the wife's civil action would ordinarily have resolved the issue of paternity in defendant's favor as well, since defendant denied paternity, and paternity was necessarily at issue in that civil action for child support. However, defendant's paternity of the children in question had previously been established in the criminal action for willful nonsupport. The doctrine of collateral estoppel, not *res judicata*, barred defendant from relitigating the issue of paternity. Defendant's paternity, therefore, could not have been one of the issues resolved against Ms. Lewis with prejudice in her civil action for child support.

Because appellate courts have sometimes used *res judicata* and collateral estoppel interchangeably, we set forth the confusing similarities and crucial distinctions between the two. Both *res*

*judicata* and collateral estoppel serve to further the "doctrine of preclusion" by prior adjudication. Subsequent actions are precluded when a court of competent jurisdiction has already reached a final judgment on the merits of a controversy. *Masters v. Dunstan*, 256 N.C. 520, 124 S.E. 2d 574 (1962). The crucial distinction between *res judicata* and collateral estoppel concerns what, precisely, is barred from being the subject of future litigations between the parties or their privies.

*Res judicata*, or claim preclusion, prevents a party, or one in privity with that party, from suing twice on the same claim or cause of action when a final judgment on the merits was entered in the first suit. Further, splitting a claim for relief or cause of action is prevented by the use of *res judicata*. That is, neither party nor a privity may sue again on any claim omitted from the original action. *In re Appeal of McLean Trucking Company*, 285 N.C. 552, 206 S.E. 2d 172 (1974).

Collateral estoppel, or issue preclusion, prevents the relitigation of specific issues actually determined in a prior action between the same parties or their privies. The key question always concerns the issue(s) *actually litigated and decided* in the original action. Consequently, collateral estoppel may be raised in a subsequent action even though that action involved a claim for relief or cause of action different from the first. *See generally*, Note, *Collateral Estoppel*, U. of Rich. L. Rev. 341 (1982).

Traditionally, as suggested, the application of both *res judicata* and collateral estoppel was governed by the rule of mutuality, which prevented the determination of a claim or an issue from being conclusive in a subsequent proceeding if the second action involved different parties. Our appellate courts have made exceptions, however, to the strict mutuality rule in cases which, when properly analyzed, are collateral estoppel cases.

Therefore, since mutuality is not always necessary for application of collateral estoppel doctrines and since the claims for relief were different in each of the three proceedings at issue in the case *sub judice* — (i) criminal prosecution for willful nonsupport; (ii) divorce from bed and board, custody and child support; and (iii) indemnification for public assistance — collateral estoppel is the doctrine to be applied. It remains, then, for us to apply these rules to the instant controversy.

State v. Lewis

Defendant is bound by the 23 April 1976 criminal judgment determining him to be guilty of willful nonsupport of his children. The issue of defendant's paternity of the children was necessarily, if by implication, litigated and decided. In *Tidwell v. Booker,* our Supreme Court said:

> An affirmative answer to the question of paternity is, however, an indispensable prerequisite to the defendant's conviction on the criminal charge. G.S. 49-7. The finding by the court in the criminal action that the defendant is the father . . . was, therefore, not a mere dictum or the determination of an insignificant matter. It was the judicial determination of an issue properly and necessarily before the court in the criminal proceeding to which the defendant was a party and in the trial of which he had his 'day in court.'

290 N.C. at 110, 225 S.E. 2d at 823. The *Tidwell* Court reached a conclusion different from the one we reach in this case, but, significantly, *Tidwell* was decided on traditional *res judicata* principles requiring strict mutuality of parties. In this case, defendant is precluded from relitigating the paternity issue pursuant to the doctrine of collateral estoppel.

As indicated, our courts have allowed an exception to the strict mutuality rule in at least two instances. In *Crosland-Cullen Co. v. Crosland,* 249 N.C. 167, 105 S.E. 2d 655 (1958), the issue involved was the validity of an assignment of an insurance policy. There, the insurance company paid the proceeds of a life insurance policy to the wife of the deceased president of Crosland-Cullen. Crosland-Cullen sued the insurance company in federal district court, alleging that the assignment was an *ultra vires* act and that the proceeds should have been paid to the company. The trial court agreed, but the Fourth Circuit Court of Appeals reversed, ruling the assignment valid. Crosland-Cullen then sued the wife in a North Carolina State court, again alleging that the assignment was invalid. The wife, a stranger to the federal proceeding, asserted the prior judgment in defense, arguing that Crosland-Cullen was collaterally estopped from again raising the assignment issue. Although there was no mutuality or parties present, our Supreme Court held that the wife had properly invoked collateral estoppel.

Judge Hedrick, writing for this Court in *Gillispie v. Bottling Co.*, 17 N.C. App. 545, 195 S.E. 2d 45, *pet. for cert. denied*, 283 N.C. 393, 196 S.E. 2d 275 (1973), recognized that mutuality is sometimes sufficient but not always necessary for application of collateral estoppel. Citing *Crosland-Cullen* with approval, he stated:

> [T]he question before us is whether the requisite identity of issues exists between plaintiff and defendant in the present case and between plaintiff and [stranger to the action] in the former case.

17 N.C. App. at 548, 195 S.E. 2d at 47. *See*, Note, *Recent Developments in North Carolina Case Law—Offensive Assertion of a Prior Judgment as Collateral Estoppel*, 52 N.C.L. Rev. 836 (1974).

*Crosland-Cullen* and *Gillispie* suggest that the following test, proposed long ago by Justice Traynor in *Bernhard v. Bank of America*, 19 Cal. 2d 807, 813, 122 P. 2d 892, 895 (1942), be used to determine the validity of a plea of collateral estoppel: "(1) Was the issue decided in the prior adjudication identical with the one presented in the action in question? (2) Was there a final judgment on the merits? (3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?" Indeed, in *Crosland-Cullen*, our Supreme Court referred to the *Bernhard* case as a well-considered opinion. And, as the *Bernhard* Court said: "It would be unjust to permit one who has had his day in court to reopen identical issues by merely switching adversaries." 19 Cal. 2d at 813, 122 P. 2d at 895.

By reason of the April 1976 criminal judgment against defendant in this case, defendant should have been precluded from raising the paternity issue in his wife's subsequent civil action for child support. *A fortiori*, defendant's counterclaim for recovery of sums he had previously paid for the support of the children was properly dismissed for failure to state a claim upon which relief could be granted in the matter on appeal—the action by the State ex rel. New Bern Child Support Agency. For similar reasons, the trial court did not err in denying defendant's motion for blood grouping tests.

V

[2]   Defendant's remaining assignments of error concern portions of the trial court's order directing defendant to pay weekly child support and to pay back support as ordered by the criminal judgment. We agree with defendant that the trial court exceeded its authority by directing defendant to make these payments. At the beginning of his order, the trial judge noted that the matter being considered was the State's motion to dismiss defendant's counterclaim because it failed to state a claim for relief and the State's motion to deny defendant's request for blood grouping tests. A ruling on the merits cannot be made on a motion to dismiss for failure to state a claim for which relief could be granted. *Wilkes v. Board of Alcoholic Control,* 44 N.C. App. 495, 261 S.E. 2d 205 (1980).

VI

The one assignment of error brought forward by the State also relates to the trial court's consideration of matters outside the scope of the State's motions. The State argues that the trial court erred in dismissing its claim for indemnification of public assistance paid. As discussed, the merits of the State's action were not before the trial court for determination. Accordingly, that portion of the trial court's order dismissing the State's action in this regard must be vacated.

VII

For the reasons stated herein, we affirm the trial court's order dismissing defendant's counterclaim for failure to state a claim upon which relief can be granted and denying defendant's motion for blood grouping tests. Those portions of the order, dismissing the State's claim for public assistance paid to defendant's children and directing defendant to pay weekly child support of $22.50 and back support accumulated pursuant to the criminal judgment, are vacated.

Affirmed in part; vacated in part. Each party is to bear its own cost.

Judges ARNOLD and PHILLIPS concur.