STATE OF NORTH CAROLINA EX REL. LIZANNA THORNE TERRY, PHYSICAL CUSTODIAN, INDIVIDUALLY AND AS PHYSICAL CUSTODIAN AND AS NATURAL GUARDIAN OF WILLIE, A MINOR CHILD v. JAMES MARROW

No. 849DC22

(Filed 6 November 1984)

Bastards § 10; Social Security and Public Welfare § 2— illegitmate child—recovery from father of A.F.D.C. payments made before father's knowledge of birth of child—proper

　　In an action against defendant father to recover monies paid under an Aid For Dependent Children Program, the State is entitled to recover for public assistance paid before service of a summons and complaint to establish paternity, compel reimbursement, and provide for future support of the child; before defendant had knowledge of the birth of his child; and before demand was made upon him to support the child. The only limitations in G.S. 110-135 relate to defendant's ability to funish support. G.S. 49-15, G.S. 110-128.

APPEAL by plaintiff from *Allen, Judge*. Judgment entered 12 September 1983 in District Court, WARREN County. Heard in the Court of Appeals 16 October 1984.

This is an action by the State to recover from the defendant monies paid under an Aid For Dependent Children program to Lizanna Thorne Terry as mother of Willie Lewis Thorne, an illegitimate child born 22 February 1970. Summons and complaint were filed 30 March 1982, and defendant was served 5 April 1982. The defendant filed answer alleging, *inter alia*, a denial of paternity and that neither plaintiff nor the child's natural mother had made demand on the defendant for support of the child. At trial on 12 September 1982, the trial judge made the following pertinent findings of fact:

5. That on or about October 4, 1982, the Defendant, James Marrow, together with Lizzie Mae Thorne (Jordan) and Willie Lewis Thorne submitted themselves to Duke Medical Center Blood Bank for blood analysis and comparison test. That the results of said blood tests and comparison established that there was a 99.98% probability that James Marrow is the natural father of the minor child, Willie Lewis Thorne.

6. That on the 9th day of December, 1982, Ben U. Allen, Judge Presiding, entered an Order in this Cause adjudicating James Marrow to be the natural father of the minor child, Willie Lewis Thorne.

. . .

9. That on the 9th day of June, 1983, the Honorable J. Larry Senter, Judge Presiding, entered an Order in this Cause whereby Judgment was entered for Plaintiff against Defendant for the sum of $4,294.87 for indemnification for public assistance previously paid for the benefit of Defendant's minor child. On the 27th day of July, 1983, the Honorable J. Larry Senter, Judge Presiding, vacated that Order entered previously on June 9, 1983, upon being advised that Ben U. Allen, District Court Judge, had retained under advisement the issue of whether or not Defendant was responsible for satisfying any debt created by the payment of public assistance to the minor child prior to April 5, 1982.

10. That Lizzie Mae Thorne (Jordan), the natural mother of the minor child, Willie Lewis Thorne, has not requested the Defendant, James Marrow, to support said minor child. Further, Defendant has not provided to the natural mother support for said child.

11. That the Warren County Child Support Enforcement Agency has written the Defendant, James Marrow, on several occasions, the first occasion being October 15, 1981, regarding the fact that he had been named as the father of the minor child and regarding his obligation to support said minor child in the event it was established that he was the father of said child. The Defendant, James Marrow, has not responded to said letters. The Court specifically finds as a fact that Plaintiff did not demand support from Defendant for his minor child until April 5, 1982.

12. That the minor child, Willie Lewis Thorne, received public assistance from the 1st day of July, 1975 until said public assistance was terminated on the 30th day of March, 1982. The total amount of public assistance paid to, or for the benefit of, said minor child is $4,294.87.

13. That the Defendant, James Marrow, is an abledbodied man, presently serving in the United States Army, and having served in the United States Army since the 1st day of November, 1969, and is capable of providing support for his minor child.

Based on the foregoing findings of fact the court made the following conclusions of law:

2. That the Defendant, James Marrow, as the natural father of the minor child, Willie Lewis Thorne, has an obligation to provide support and maintenance for said minor child.

3. That demand for payment by Defendant for support of his minor child and for indemnification for public assistance previously paid was not made on Defendant until he was served with Summons and Complaint in this Cause on April 5, 1982.

4. That the Defendant, James Marrow, as the natural father of the minor child, Willie Lewis Thorne, is obligated to

indemnify Plaintiff for public assistance paid subsequent to April 5, 1982.

The trial judge thereupon entered judgment for the State requiring the defendant to pay into the office of the Clerk of the Superior Court $100.00 per month, $25.00 of which was to be paid the Department of Human Resources as reimbursement for payments made to the mother on and after 5 April 1982, the day defendant was served with summons and copy of complaint. The State appeals.

*Attorney General Rufus L. Edmisten by Assistant Attorney General Clifton H. Duke and Marvin P. Rooker for plaintiff appellant.*

*Frank W. Ballance, Jr., P.A., by Ronnie C. Reaves for defendant appellee.*

HILL, Judge.

The State contends that by the authority of G.S. 110-135 it is entitled to recover from defendant reimbursement for public assistance paid for the benefit of his minor child prior to the service of a summons and complaint to establish paternity, compel reimbursement for the public assistance debt, and provide for the future support of the child. On the other hand, defendant contends the trial court was correct in ruling that the State was not entitled to recover from him for benefits paid for the benefit of his minor illegitimate son before he had any knowledge of the birth of his son and before demand was made upon him to support the child. He points out that the first notice he had that he was the alleged father was from the Warren County Child Support Enforcement Agency on 15 October 1981, almost 12 years after the birth of the child. We conclude the trial court erred and reverse its judgment.

The Child Support Enforcement Program was established by the State on adhering to the Congressional mandate that required each state to implement the program. The aim of the program is to offset welfare costs by strengthening the State's efforts to enforce child support obligations. See 42 U.S.C. § 651 *et seq.* The North Carolina Legislature implemented the program through Ar-

ticle 9 of Chapter 110 of the General Statutes. G.S. 110-128 addresses the broad purposes of this Article:

> The purposes of this Article are to provide for the financial support of dependent children; to provide that public assistance paid to dependent children is a supplement to the support required to be provided by the responsible parent; *to provide that the payment of public assistance creates a debt to the State; to provide that the acceptance of public assistance operates as an assignment of the right to child support*; to provide for the location of absent parents; to provide for a determination that a responsible parent is able to support his children; *and to provide for enforcement of the responsible parent's obligation to furnish support* and to provide for the establishment and administration of a program of child support enforcement in North Carolina. (Emphasis added.)

In *Tidwell v. Booker*, 290 N.C. 98, 225 S.E. 2d 816 (1976), our Supreme Court dealt, in part, with a civil reimbursement claim by the mother of an illegitimate child. The following language in the opinion is instructive:

> The duty of the father of an illegitimate child to support such child is not created by the judicial determination of paternity. That determination is merely a procedural prerequisite to the enforcement of the duty by legal action. The father's duty to support his child arises when the child is born.

*Id.* at 116, 225 S.E. 2d at 827. The *Tidwell* court recognized the right of a custodial parent to compel reimbursement for expenditures incurred in support of the child as well as the mother's right to judgment requiring reimbursement by the child's father as a liability created by G.S. 49-15.

When the State has been compelled by a parent's default to make Aid For Dependent Children payments for a minor child, G.S. 110-135 provides that an action to compel reimbursement of the debt created must be commenced within "five years subsequent to the receipt of the last grant of public assistance." An action to collect a public assistance debt, if timely filed, may claim

all public assistance granted subsequent to 30 June 1975, provided there is no five year gap in payments.

The only limitations in G.S. 110-135 on the extent of reimbursement for which judgment may be obtained relate to the defendant's financial ability to furnish support during the relevant period of time. In the case under review, the trial court found the defendant to be "an abled-bodied man, presently serving in the United States Army, and having served in the United States Army since the 1st day of November, 1969, and . . . capable of providing support for his minor child." The trial judge further found that the child had received $4,294.87 since 1 July 1975 through 30 March 1982. No exception was taken to these findings. Over an 81 month period the average monthly payment would have been $53.00 per month, an amount well within defendant's ability to pay.

The judgment of the trial court is vacated and the cause remanded to the trial court with instructions to enter a judgment in accordance with the terms of this opinion.

Vacated and remanded.

Judges ARNOLD and WELLS concur.