**STATE of Alaska, DEPARTMENT OF REVENUE, CHILD SUPPORT ENFORCEMENT DIVISION, ex rel. Chadaye HAWTHORNE, Appellant,**

v.

**Alfredo N. RIOS, Appellee.**

No. S–7166.

Supreme Court of Alaska.

May 23, 1997.

Diane L. Wendlandt, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellant.

Tracey A. Tillion, Law Offices of Gordon F. Schadt, Anchorage, for Appellee.

---

Before COMPTON, C.J., and
RABINOWITZ, MATTHEWS, EASTAUGH
and FABE, JJ.

## OPINION

RABINOWITZ, Justice.

### I. INTRODUCTION

The primary question raised in this appeal is, from what date does a child's biological father have a duty to support his child?

### II. FACTS AND PROCEEDINGS

Chadaye Hawthorne was born on February 9, 1986, to Lachelle Hawthorne. Chadaye's birth certificate did not name Alfredo Rios as the father. The State of Alaska has paid public assistance to Lachelle on behalf of Chadaye since 1989.

In December 1991 Lachelle signed a paternity affidavit naming Rios as Chadaye's father. In July 1992 the Child Support Enforcement Division (CSED) filed a complaint against Rios seeking to establish paternity of Chadaye. Counsel was then appointed for Rios pursuant to the Soldiers' and Sailors' Civil Relief Act. After his return to the United States, Rios submitted to a blood test. The results showed a 99.55 percent probability of Rios's paternity. CSED then moved

1. CSED's Memorandum in Support of Motion for Summary Judgment concludes by also requesting "summary judgment on the issues of . . . the duty of support and . . . costs and attorney fees."

2. In his memorandum in opposition Rios further stated:

Defendant Rios currently is stationed at Fort Lee, Virginia, but for five (5) years after the birth of Chadaye Hawthorne he was stationed at Fort Richardson. During that time he saw Lachelle Hawthorne on several occasions and he even confronted her about the identity of the father of Chadaye three separate times. Lachelle Hawthorne adamantly denied that Defendant Rios was the father each time, as did Lachelle Hawthorne's grandmother. Lachelle Hawthorne's statements denied Defendant Rios the right to have a relationship with his daughter during her formative years and while he was living in the same city.

Any child support alleged due from the date of Chadaye's birth obviously would have attached to it severe penalties and interest. These charges are unfair to impose on a father who has been denied rights to his child for nearly eight (8) years, purely as a result of

for summary judgment on the issue of paternity.[1] Rios did not oppose summary judgment on the issues of paternity and reimbursement of paternity testing costs. In his "Limited Opposition To Motion For Summary Judgment And Costs," Rios opposed summary judgment on the issue of back child support. In this regard Rios stated:

Nowhere in Plaintiff's memorandum is the duty of support discussed, except in the last paragraph wherein the State requests summary judgment thereon, and therefore it is impossible for Defendant Rios to file a complete opposition to the issue. Defendant Rios therefore, requests that this Court make note on the Summary Judgment Order that the duty of support has not been briefed or decided, and that it remains for review.[2]

In its reply to Rios's opposition, CSED argued that issues concerning the amount of ongoing child support, back child support, support payment plans, and visitation were not properly before the superior court. CSED emphasized that its motion for summary judgment was limited to a request that Rios be adjudicated the biological father of Chadaye and that as such he had a duty to support Chadaye.[3]

Lachelle Hawthorne's prior false statements. Moreover, to impose the duty of back child support now, is unfairly prejudicial as Defendant Rios has a wife and another child whom he supports. The imposition of a large back support obligation now, which could have been paid all along if Lachelle Hawthorne had been truthful, is an undue burden and would take away from his ability to support his family. Alternatively, if the duty of support were imposed on Defendant Rios, then Defendant Rios would necessarily have the right to play a part in his daughter's life, such as visitation and unrestricted communication with her. Defendant Rios would therefore request that this Court add to any Order for support that Lachelle Hawthorne consent and allow Defendant Rios visitation and unrestricted communications with his daughter, Chadaye Hawthorne.

3. CSED further elaborated:

CSED has made no administrative determination as to the amount of support due. Indeed, it can not determine the amount of support which Alfredo Rios will be obligated to pay until this court rules that he is Chadaye

The superior court granted summary judgment to CSED. Its order provided in part that the child support obligation "is deemed effective from the date of judgment." CSED moved for reconsideration of the provision making the child support award prospective, asserting that "[a]t stake is $40,403 of welfare paid to support the child since her birth, at least a portion of which the State hopes to recover from the child's father, the defendant." Reconsideration was denied and this appeal followed.

III. *STANDARD OF REVIEW*

■ This court reviews questions of law *de novo. Wright v. Black,* 856 P.2d 477, 479 (Alaska 1993). "The standard of review applicable to a child support award is abuse of discretion. An award will be set aside only if we are 'left with a definite and firm conviction that a mistake has been made.'" *Terry v. Terry,* 851 P.2d 837 (Alaska 1993) (quoting *Richmond v. Richmond,* 779 P.2d 1211, 1216 (Alaska 1989) (citation omitted)).

IV. *DISCUSSION*

   A.  *When Does a Parent's Duty to Support His or Her Child Commence?*

■ CSED frames the legal issue presented in this appeal as follows: "[F]rom what date does a child's biological father have a duty to support his child?"[4] The answer is supplied by both statute and common law. Alaska Statute 25.20.030 provides in relevant part, "Each parent is bound to maintain the parent's children when poor and unable to work to maintain themselves." In *Matthews v. Matthews,* 739 P.2d 1298, 1299 (Alaska 1987), we concluded that a parent is obligated by statute (citing AS 25.20.030) and by the common law to support his or her children. We further observed that this duty of sup-

port exists even in the absence of a court order of support and that "[a] parent's duty of support encompasses a duty to reimburse other persons who provide the support the parent owes." *Id.*

■ Based on the foregoing, we hold that a biological parent's duty of support commences at the date of the birth of the child. We therefore reject the superior court's implicit holding that in the circumstance of a child born out of wedlock, the biological parent's duty of support does not begin until a court has adjudicated paternity. CSED correctly notes that, although an adjudication of paternity may be a prerequisite to enforcement of a duty of support, it does not create the duty of support.[5]

Sound policy reasons support a holding that the duty of child support commences from the birth of the child. As the court reasoned in *Cyrus v. Mondesir,* 515 A.2d 736, 738–39 (D.C.1986):

> [P]recluding a retroactive award would create an incentive for men to avoid their child support obligations for some period of time by delaying the process of adjudicating paternity. The creation of such an incentive would, of course, run counter to the statutory purpose of providing for the needs of children without regard to circumstances of birth.

(Footnote omitted.)

   B.  *The Superior Court's Provision that Rios's Child Support Obligation "is deemed effective from the date of judgment."*

■ Alaska Statute 25.27.120(a) provides that a parent

> is liable to the state in the amount of assistance granted under AS 47.07 and AS

---

Hawthorne's father. Once this court rules on paternity, CSED should be permitted to determine the amount of defendant's support obligation administratively, pursuant to AS 25.2[7].140 through 25.27.180.

4. CSED's brief presents the issue as follows:
> Did the trial court err when it held that Alfredo Rios's duty to support his child did not commence until paternity was adjudicated, thus preventing the State of Alaska from recovering reimbursement for public assistance paid on behalf of the child before the adjudication of paternity?

5. *See Weaver v. Chester,* 195 Ga.App. 471, 393 S.E.2d 715, 717 (1990) ("[I]t is not the father's obligation to support the child which is made contingent upon an adjudication of paternity but simply the right to enforce that legal obligation through legal process.") (superseded by statute in other respects); *Commonwealth v. Chase,* 385 Mass. 461, 432 N.E.2d 510, 517 (1982); *Tidwell v. Booker,* 290 N.C. 98, 225 S.E.2d 816, 827 (1976).

47.25.310–47.25.420 to a child to whom the obligor owes a duty of support except that, if a support order has been entered, the liability of the obligor for assistance granted under AS 47.25.310–47.25.420 may not exceed the amount of support provided for in the support order. . . . [6]

CSED is charged with obtaining, enforcing, and administering orders for child support. AS 25.27.020. In the instant case, CSED instituted proceedings to establish Rios's paternity as a prerequisite to establishing, through its administrative procedures, the amount of child support owed by Rios.[7]

As noted above, in granting summary judgment establishing Rios's paternity of Chadaye, the superior court further provided that Rios's child support obligation "is deemed effective" from the date of entry of summary judgment. We conclude that this portion of the superior court's order should be vacated.

Earlier we set out in considerable detail the record context in which Rios raised what

is essentially an anticipatory equitable estoppel or waiver defense against CSED's effort to obtain reimbursement for AFDC support payments made to the custodial parent. Assuming that estoppel or waiver is available against CSED's reimbursement claim, we conclude that the superior court lacked an evidentiary basis for the prospective support provision it fashioned. Rios's equitable and waiver arguments are confined to his opposition memorandum to CSED's motion for summary judgment. Further, the record shows that the parties were never afforded the opportunity to develop an evidentiary record concerning these potential issues. Thus, given the lack of any admissible evidence supporting an equitable estoppel or waiver defense to CSED's reimbursement claim, we hold that it was error for the superior court to *sua sponte* engraft a prospective support provision onto its order granting summary judgment.

## IV. CONCLUSION

That portion of the superior court's order granting summary judgment which provides

---

**6.** AS 25.27.130 provides:

> **Subrogation of state.** (a) If the obligor is liable to the state under AS 25.27.120(a) or (b), the state is subrogated to the rights of the obligee to
>
> (1) bring an action in the superior court seeking an order of support;
>
> (2) proceed under AS 25.27.160–25.27.270 to establish a duty of support; or
>
> (3) enforce by execution, in accordance with AS 25.27.230–25.27.270, or otherwise, a support order entered in favor of the obligee.
>
> (b) To establish or enforce an order of support, including, if applicable, a medical support order, based on the subrogation of the state, the agency is not limited to the amount of assistance being granted to the child.
>
> (c) The recovery of any amount for which the obligor is liable that exceeds the total assistance granted under AS 47.07 and AS 47.25.310–47.25.420 shall be paid to the obligee.
>
> (d) Except as provided in (f) of this section, if the obligee is not receiving assistance under AS 47.07 or AS 47.25.310–47.25.420 at the time the state recovers money in an action under this section, the recovery of any amount for which the obligor is liable shall be distributed to the obligee for support payments, including medical support payments, that have become due and unpaid since the termination of assistance under AS 47.07 or AS 47.25.310–

> 47.25.420 under a support order in favor of the obligee.
>
> (e) After payment to the obligee under (d) of this section, the state may retain an amount not to exceed the total unreimbursed assistance paid on behalf of the obligee under AS 47.07 or AS 47.25.310–47.25.420.
>
> (f) Notwithstanding (d) of this section, the state shall, if required under federal law or regulations, distribute amounts recovered through offset of the obligor's federal tax refund as past due support with first distribution to the state for unpaid support assigned to the state under AS 47.07.025 and AS 47.25.345. Alaska's Aid to Families with Dependent Children Act (AFDC) is found in AS 47.25.310–.420.

**7.** AS 25.27.040 authorizes CSED to initiate efforts to have the paternity of children born out of wedlock determined by the court. AS 25.27.140 through AS 25.27.180 further authorize CSED to administratively determine the amount of the support obligation. In this regard AS 25.27.140(a) provides:

> If no support order has been entered, the agency may establish paternity and a duty of support utilizing the procedures prescribed in AS 25.27.160–25.27.220 and may enforce a duty of support utilizing the procedures prescribed in AS 25.27.230–25.27.270. Action under this subsection may be undertaken upon application of an obligee, or at the agency's own discretion if the obligor is liable to the state under AS 25.27.120(a) or (b).

that Rios's support obligation "is deemed effective from the date of judgment" is RE-VERSED and VACATED. The case is RE-MANDED for further proceedings, not inconsistent with this opinion, for the purposes of determining the amount of child support Rios owes, and whether he has any estoppel and waiver defenses to CSED's claims for reimbursement for AFDC payments made to the custodial parent.[8]

---

**8.** For purposes of remand, we caution that a custodial parent's conduct cannot amount to an estoppel or waiver altering the obligation to pay child support. This follows from the rule that parties cannot by agreement alter a noncustodial parent's obligation to pay child support without court approval. With respect to CSED's claims for reimbursement, the focus of any waiver or estoppel defense must be on the conduct of CSED. Further, the doctrine of laches is inapplicable to a reimbursement claim by CSED for AFDC payments since such an action is one at

law and thus governed by the applicable statute of limitations.

In regard to actions to establish child support obligations, AS 25.27.135 provides:

**Limitation on actions to establish child support obligation.** If the same causes of action concerning a duty of child support are pending concurrently in court and before the agency, the second action filed may be abated upon the motion of a party or the agency. The court or the agency may award full costs and attorney fees to the party prevailing on the abatement motion.