NOTICE

*Memorandum decisions of this court do not create legal precedent.  A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JORI LYNN WALKER, | ) | |
| f/k/a JORI LYNN SKINNER, | ) | Supreme Court No. S-14470 |
| | ) | |
| Appellant, | ) | Superior Court No. 4FA-05-01327 CI |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND JUDGMENT[*] |
| ADAM ERIC HAGBERG, | ) | |
| | ) | No. 1450 – February 6, 2013 |
| Appellee. | ) | |
| _____ | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Douglas Blankenship, Judge.

Appearances:  Jori L. Walker, pro se, Fairbanks, Appellant. Mila A. Neubert, Neubert Law Office, LLC, Fairbanks, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, and Maassen, Justices.  [Carpeneti, Justice, not participating.]

1.      Jori Lynn Walker appeals the superior court's denial of her motion to modify her son Adison's legal and physical custody decree.  Because the superior court committed no error, we affirm the court's decision.

2.      In 2002 Jori gave birth to a son, Adison.  Adam Eric Hagberg is Adison's father.  At the time, Jori was married to a different man who was named as

_____

[*]      Entered under Alaska Appellate Rule 214.

Adison's father on the birth certificate. Initially, Adam had no involvement with Adison, but in 2004, after Jori separated from her husband, paternity testing confirmed that Adam was Adison's father, and Adam then started to become involved in Adison's life. In March 2005 Jori asked the superior court to award her sole legal and primary physical custody of Adison. Adam asked for joint legal and shared physical custody. In March 2006 the superior court awarded the parties joint legal custody, with Jori having primary physical custody.

3. Jori appealed several aspects of the custody order to this court. In *Skinner v. Hagberg*,[1] we reversed portions of the order involving child support and visitation expenses and remanded the matter to the superior court for further proceedings. We affirmed the order's visitation provisions but suggested that because Adison was by then approaching school age, on remand the superior court and the parties might wish to revisit the visitation schedule.[2] On remand, the superior court issued a visitation schedule that provided that Adison would visit with Adam every other weekend during the school year, with visits alternating between Anchorage, where Adam resides, and Fairbanks, where Jori and Adison reside. Adison was also to visit Adam in Anchorage each summer for a period totaling one week for each year of his age, capped at ten weeks per summer.

4. In April 2010 Jori claimed that circumstances had changed since the custody order was entered. She moved to have the physical custody arrangement modified to eliminate all of Adison's school-year visits in Anchorage, to cap Adison's summertime visits with Adam at four weeks per year, and to have herself appointed Adison's sole legal custodian. Adam opposed Jori's motion and filed a cross-motion

---

[1] 183 P.3d 486 (Alaska 2008).

[2] *Id.* at 491 n.24.

asking that all of the alternating weekend school-year visits take place in Anchorage and asking that the superior court order therapy for Adison. Jori agreed with the request for therapy, which began before the hearing on the motions was held.

5.      The superior court held an evidentiary hearing in June 2011, at which Jori had the burden of demonstrating that circumstances had changed substantially since the existing custody order was entered, and that the changed circumstances, considered together with other facts relevant to Adison's best interests, warranted the changes she was requesting be made to the custody order.[3] Jori's evidence showed that Adison has recently begun to resist visiting with Adam in Anchorage, although once in Anchorage he invariably has a good time with Adam and Adam's family. She presented evidence that Adam missed at least two visits with Adison and was out of touch for a period of weeks, possibly due to Adam having received a DUI citation. She testified that she and Adam no longer communicate effectively regarding Adison's upbringing, but she acknowledged that the problem lies with both of them, and she admitted that she has not kept Adam informed about Adison's schoolwork and medical appointments. She testified that she did not tell Adam about a police investigation into a matter involving her family because "we don't communicate well enough for that." She also alleged that she had attempted to comply with a superior court order that she and Adam participate in mediation to improve their communication, but that Adam refused to comply with the order.

6.      Adam presented evidence showing that he interacts appropriately with Adison and that Adison frequently participates in social functions with Adam's extended family in Anchorage. Adam's mother, grandmother, and a close family friend

---

[3]      *Long v. Long*, 816 P.2d 145, 150 (Alaska 1991) (citing *Lee v. Cox*, 790 P.2d 1359, 1361 (Alaska 1990)). Adam had the same burden as to his cross-motion, but the superior court's ruling on the cross-motion is not before us in this appeal.

testified that Adam and Adison enjoy a typical father-son relationship and that Adison enjoys himself in Anchorage and actively participates in activities with Adam and his family. As for communication with Jori, Adam testified that he had asked Jori to keep him informed about Adison's parent-teacher conferences and medical and counseling appointments, but that she had not done so. But Adam also testified that when Adison described potentially dangerous conditions in Jori's home to him, he advised the child to speak with Jori, but that he did not do so himself because "we weren't on good speaking terms." Adam admitted that he had not complied with the superior court order that the couple engage in mediation to devise a communication plan.

7. By the time of the hearing, Adison had participated in 11 therapy sessions with Fairbanks-based counselor Cynthia Bridgman, in which Jori had frequently participated and in which Adam had participated on one occasion. Bridgman, who was qualified as an expert in child therapy, testified that Adison loves Adam and has a close relationship with Adam's mother, but that Adam needs help to develop empathy with Adison and to improve his approach to parenting and interacting with his son. She recommended that Adam and Adison participate in ongoing joint counseling sessions. She also testified that the monthly weekend school-year visits to Anchorage are hard on Adison, but that his response to the situation will depend on how it is presented to him by his parents. She stated that in her opinion the amount of summer visitation is excessive because it causes Adison difficulty in developing social relationships in his home community, but she acknowledged that children in divided families often spend summers away from their home communities.

8. At the close of the hearing, the superior court denied the motions to change legal and physical custody and the visitation schedule, leaving the existing arrangements in place. Regarding the physical custody division and the visitation schedule, the superior court observed that Adison has a good time during his visits to

Anchorage, and it noted with approval the family atmosphere that Adam's family conveys and the positive role models the family provides for Adison. The superior court noted that Jori's family and Adam's family each have positive and negative aspects, and it concluded that Adison's best interests will be served by continuing the existing visitation arrangement.

9.	As to legal custody, the superior court acknowledged that communication between Jori and Adam is a serious concern, and the court encouraged the parents to obtain help to improve their communications. But despite this issue, the superior court ordered the joint legal custody arrangement to continue. The court addressed Jori in explaining its decision:

> I'm going to require that it still be shared legal custody, and this gets down to separating your interests from the best interests of Adison. Maybe you folks are people that can't do that. . . . If [Adam] as a parent has rights and responsibilities of a parent, and something happens up here it's in Adison's best interests for Mr. Hagberg to know, whether you like that or not. And if you don't do it because you don't like it, then it's your interests that are trumping Adison's best interests. . . . It's important that both parents have equal rights.

The superior court also ordered Adam and Adison to participate in biweekly counseling sessions with Bridgman in Fairbanks. On December 13, 2011, the superior court reduced its order to writing, and it denied a motion for reconsideration that Jori filed.

10.	Jori appeals the superior court's decision, proceeding pro se. We hold pro se litigants to a less stringent standard than lawyers, and we read their pleadings and briefing generously.[4] We review a trial court's custody order for abuse of discretion,

---

[4]	*Bauer v. State, Dep't of Corr.*, 193 P.3d 1180, 1184 (Alaska 2008) (citing *Breck v. Ulmer*, 745 P.2d 66, 75 (Alaska 1987)); *Hymes v. Deramus*, 119 P.3d 963, 965 (continued...)

which we will find "when a trial court considers improper factors or improperly weighs factors in its decisional process."[5] We review factual findings for clear error, which we will find "when, after review of the entire record, 'we are left with a definite and firm conviction' a mistake occurred."[6] "We grant 'particular deference to the trial court's factual findings when they are based primarily on oral testimony, because the trial court, not this court, performs the function of judging the credibility of witnesses and weighing conflicting evidence.' "[7] We ordinarily will not overturn a trial court's factual findings that are based on conflicting evidence, and we will not reweigh evidence when the record provides clear support for the trial court's ruling.[8]

11. In making a custody determination, the superior court must consider the factors listed in AS 25.24.150(c).[9] The court's findings must "give a clear indication

---

[4](...continued)
(Alaska 2005).

[5] *Wee v. Eggener*, 225 P.3d 1120, 1124 (Alaska 2010) (citing *Jaymot v. Skillings-Donat*, 216 P.3d 534, 538-39 (Alaska 2009)).

[6] *Id.* (quoting *Dingeman v. Dingeman*, 865 P.2d 94, 96 (Alaska 1993)).

[7] *Hunter v. Conwell*, 276 P.3d 413, 418 (Alaska 2012) (quoting *Millette v. Millette*, 177 P.3d 258, 261 (Alaska 2008)).

[8] *Pam R. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 185 P.3d 67, 71 (Alaska 2008) (citing *Martin N. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 79 P.3d 50, 53 (Alaska 2003); *D.M. v. State, Div. of Family & Youth Servs.*, 995 P.2d 205, 214 (Alaska 2000)).

[9] *Thomas v. Thomas*, 171 P.3d 98, 102 (Alaska 2007). AS 25.24.150(c) provides:

> The court shall determine custody in accordance with the best interests of the child under AS 25.20.060–25.20.130. In determining the best interests of the child the court shall

(continued...)

of the factors considered important by the trial court or allow us to determine from the

---

[9](...continued)
consider

(1) the physical, emotional, mental, religious, and social needs of the child;

(2) the capability and desire of each parent to meet these needs;

(3) the child's preference if the child is of sufficient age and capacity to form a preference;

(4) the love and affection existing between the child and each parent;

(5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;

(6) the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child, except that the court may not consider this willingness and ability if one parent shows that the other parent has sexually assaulted or engaged in domestic violence against the parent or a child, and that a continuing relationship with the other parent will endanger the health or safety of either the parent or the child;

(7) any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents;

(8) evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child;

(9) other factors that the court considers pertinent.

AS 25.24.150(d) limits the facts that the trial court may consider to those that directly affect the child's well-being.

record what considerations were involved."[10] Here, the superior court's decision satisfies that standard. The superior court noted that Adison's best interests are served by providing him with as much access to each parent as circumstances allow, and the court spoke approvingly of the family atmosphere and the positive role models provided by Adam's family. The superior court observed that Jori's and Adam's households each exhibit significant positive aspects as well as areas that could benefit from improvement. The superior court observed that Jori and Adam both love Adison, and both parents provide him with a positive family situation. The superior court emphasized that Jori and Adam each need to work to encourage Adison's ongoing relationship with the other parent. The court advised Adam that he needs to act more maturely, and it acknowledged evidence that Adam might have issues with alcohol abuse, but it did not consider these factors substantial enough to warrant modifying the existing custody or visitation arrangement. The superior court noted that if Adison, who was nine years old at the time, showed reluctance to travel to Anchorage to visit with Adam, his parents could present the visits in a way that would encourage him to go.[11] The superior court thus addressed the factors listed in AS 25.24.150(c), and the court's findings provide us with ample indication of the considerations upon which its decision was based.

12. In her appellate claim regarding physical custody and visitation, Jori argues that the superior court erred in according weight to witnesses who testified about Adison's positive experiences in Anchorage, yet Jori agrees that Adison always has a good time in Anchorage. In addition, she acknowledges that Adam's extended family

---

[10]     *Borchgrevink v. Borchgrevink*, 941 P.2d 132, 137 (Alaska 1997) (citing *Bird v. Starkey*, 914 P.2d 1246, 1249 n.4 (Alaska 1996)).

[11]     Whether a child is of sufficient age and capacity to form a preference regarding custody arrangements is a matter that is committed to the discretion of the trial court. *Fardig v. Fardig*, 56 P.3d 9, 13 n.13 (Alaska 2002).

provides "the same love, affection, bonding, and appropriate role models" for Adison as does her own extended family. While she argues that in the past Adam has impeded her ability to speak privately with Adison when he is in Anchorage, she fails to acknowledge that the superior court addressed this issue when it directed each parent to take positive steps to encourage a close relationship between Adison and his other parent. Finally, she complains that the superior court improperly ignored testimony by Adison's therapist about Adison's welfare. But the superior court extensively analyzed the facts related to Adison's well-being, and, contrary to counselor Bridgman's opinion that the summer visitation provisions are "excessive," the court determined that Adison's best interests dictate that the existing visitation arrangements continue.[12] The superior court's finding was supported by substantial evidence, and we thus find no error in the court's denial of Jori's motion to modify the physical custody and visitation arrangements.

13. On the question of Jori's motion to modify legal custody, the essence of legal custody is "responsibility in the making of major decisions affecting the child's welfare."[13] While recognizing that Alaska's legislature has expressed a policy favoring joint legal custody,[14] we have stated that such custody is appropriate only when parents

---

[12] A trial court may reject the opinion of an expert witness so long as "the evidence as a whole supports the court's decision." *Ebertz v. Ebertz*, 113 P.3d 643, 647-48 (Alaska 2005). That standard is satisfied here.

[13] *See Bell v. Bell*, 794 P.2d 97, 99 (Alaska 1990).

[14] *See* An Act Relating to Child Custody, Ch. 88, § 1(a), SLA 1982:

The legislature finds that it is generally desirable to assure a minor child frequent and continuing contact with both parents . . . and that it is in the public interest to encourage parents to share the rights and responsibilities of child rearing. While actual physical custody may not be practical or appropriate in

(continued...)

can "cooperate and communicate in the child's best interest."[15] In this case, the parents acknowledge that they do not communicate well. But while it is clear that the parents do not communicate effectively, Adison's interests do not appear to have suffered significantly as a result.[16] Jori points to no evidence to suggest that Adison's best interests will be better served if Jori is appointed his sole legal custodian, nor does she point to evidence to refute the superior court's conclusion that the parents should share equal rights. We thus find no error in the superior court's decision to continue joint legal custody.

14.    In addition to asking us to reverse the superior court's denial of her motion to modify the custody and visitation arrangements, Jori argues that the superior court's directive that Adam must participate in counseling with Adison was not properly finalized by the superior court and was not followed by Adam. She also asks us to sanction Adam in the future if he fails to follow superior court orders, to investigate the propriety of Adam's attorney having obtained allegedly undiscoverable documents during discovery for the evidentiary hearing, and to order Adam to replace funds that were removed from Adison's personal bank account to satisfy Adam's bills. These

---

[14](...continued)
all cases, it is the intent of the legislature that both parents have the opportunity to guide and nurture their child and to meet the needs of the child on an equal footing beyond the considerations of support or actual custody.

[15]    *Collier v. Harris*, 261 P.3d 397, 405 (Alaska 2011) (quoting *Jaymot v. Skillings-Donat*, 216 P.3d 534, 540 (Alaska 2009)) (internal quotation marks omitted).

[16]    Evidence was presented that Adam missed several visits without notifying Jori, that on a few occasions one parent declined to share potentially important information with the other, and that Jori did not keep Adam informed about Adison's schoolwork or medical appointments. In addition, the superior court admonished Jori not to say things to Adison that are detrimental to his visits with Adam.

matters are appropriately addressed to the superior court and are not properly before us in this appeal.

15. For the foregoing reasons, we AFFIRM the superior court's ruling denying Jori's motion to modify Adison's existing custody decree.